**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 24, 2023

_González C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 24, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| CHRIS QUINN, an individual; CRAIG LEUTHOLD, an individual; SUZIE BURKE, an individual; LEWIS and MARTHA RANDALL, as individuals and the marital community comprised thereof; RICK GLENN, an individual; NEIL MULLER, an individual; LARRY and MARGARET KING, as individuals and the marital community comprised thereof; and KERRY COX, an individual, | No. 100769-8 |
|  | EN BANC |
| Respondents, | Filed: <u>March 24, 2023</u> |
| v. |  |
| STATE OF WASHINGTON; DEPARTMENT OF REVENUE, an agency of the State of Washington; VIKKI SMITH, in her official capacity as Director of the Department of Revenue, |  |
| Appellants, |  |
| EDMONDS SCHOOL DISTRICT, TAMARA GRUBB, MARY CURRY, and WASHINGTON EDUCATION ASSOCIATION, |  |
| Appellants. |  |

APRIL CLAYTON, an individual;
KEVIN BOUCHEY, an individual;
RENEE BOUCHEY, an individual;
JOANNA CABLE, an individual;
ROSELLA MOSBY, an individual;
BURR MOSBY, an individual;
CHRISTOPHER SENSKE, an individual;
CATHERINE SENSKE, an individual;
MATTHEW SONDEREN, an individual;
JOHN MCKENNA, an individual;
WASHINGTON FARM BUREAU;
WASHINGTON STATE TREE FRUIT
ASSOCIATION; and WASHINGTON
STATE DAIRY FEDERATION,

                Respondents,

      v.

STATE OF WASHINGTON;
DEPARTMENT OF REVENUE, an
agency of the State of Washington;
VIKKI SMITH, in her official capacity as
Director of the Department of Revenue,

                Appellants,

EDMONDS SCHOOL DISTRICT,
TAMARA GRUBB, MARY CURRY,
and WASHINGTON EDUCATION
ASSOCIATION,

                Appellants.

STEPHENS, J.—In 2021, the Washington Legislature enacted a capital gains tax, levied at a rate of seven percent on the sale or exchange of certain long-term capital assets. Ch. 82.87 RCW. Two groups of plaintiffs, the Quinn and Clayton

2

*Quinn v. State*, No. 100769-8

plaintiffs (Plaintiffs), brought suit to facially invalidate the tax on three independent constitutional grounds. They principally claim the tax is a property tax on income, in violation of the uniformity and levy limitations on property taxes imposed by article VII, sections 1 and 2 of the Washington Constitution. They also claim the tax violates the privileges and immunities clause of the Washington Constitution and the dormant commerce clause of the United States Constitution. WASH CONST. art. I, § 12; U.S. CONST. art. I, § 8, cl. 3. In defending the tax, the State argues that it is a valid excise tax not subject to article VII's uniformity and levy requirements, and that it is consistent with other state and federal constitutional requirements.

The court below concluded the tax is a property tax that violates article VII's uniformity requirement. In light of this ruling, the court did not address Plaintiffs' additional constitutional challenges. We accepted direct review and now reverse. The capital gains tax is appropriately characterized as an excise because it is levied on the sale or exchange of capital assets, not on capital assets or gains themselves. This understanding of the tax is consistent with a long line of precedent recognizing excise taxes as those levied on the exercise of rights associated with property ownership, such as the power to sell or exchange property, in contrast to property taxes levied on property itself. Because the capital gains tax is an excise tax under Washington law, it is not subject to the uniformity and levy requirements of article VII. We further hold the capital gains tax is consistent with our state constitution's

3

privileges and immunities clause and the federal dormant commerce clause. We therefore reject Plaintiffs' facial challenge to the capital gains tax and remand to the trial court for further proceedings consistent with this opinion.

BACKGROUND AND PROCEDURAL HISTORY

Taxation in Washington is unique. Unlike most other states, we have no state personal or corporate income tax and instead generate revenue primarily through a combination of sales taxes, property taxes, and the business and occupation (B&O) tax—a tax on the privilege of doing business in Washington as measured by gross receipts. *See* INST. ON TAX'N & ECON. POL'Y, WHO PAYS? A DISTRIBUTIONAL ANALYSIS OF THE TAX SYSTEMS IN ALL 50 STATES 127 (6th ed. 2018) (hereinafter ITEP), https://www.itep.sf02.digitaloceanspaces.com/whopays-ITEP-2018.pdf [https://perma.cc/E6GN-U29Z]. Washington's tax system has earned the regrettable title of most regressive in the nation. *Id.* at 7-8; *see also* RCW 82.87.010. The poorest individuals bear the greatest tax burden due in large part to our heavy reliance on sales taxes and the lack of a graduated income tax, with low wage earners paying nearly six times more in state taxes as a percentage of personal income than Washington's wealthiest residents. ITEP, *supra*, at 126. This burden falls disproportionately on Black, Indigenous, and People of Color (BIPOC), who are overrepresented in low income brackets. *See, e.g.*, WASH. FUTURE FUND COMM., A REPORT TO THE LEGISLATURE 17 (2022), https://www.tre.wa.gov/wp-

*Quinn v. State*, No. 100769-8

content/uploads/2022-WFF-Committee-Report_Submitted-11.30.22.pdf

[https://perma.cc/7QFG-3BNX].

Much of our modern taxation landscape can be traced to the 1930s—an era of rapid socioeconomic change and accompanying tax reform efforts, and related state Supreme Court decisions challenging those efforts. This court's decisions from that era still shape Washington tax law today. The capital gains tax must be understood in the context of history, so we provide a historical overview of taxation in Washington since early statehood before turning to the underlying facts and procedural history of this case.

*Background on Washington's Tax System*

Beginning in territorial days and through early statehood, Washington relied almost exclusively on ad valorem property taxes to fund the government.[1] DON BURROWS, THE ECONOMICS AND POLITICS OF WASHINGTON'S TAXES FROM STATEHOOD TO 2013, at 82, 87-88 (2013) (in 1891, 95 percent of state and local tax revenues came from property taxes). During this early period, Washington's economy was driven by farming, logging, mining, fishing, and like industries, a reflection of the state's abundance of land and natural resources. BURROWS, *supra*,

---

[1] An "ad valorem tax" is "imposed proportionally on the value of something (esp[ecially] real property), rather than on its quantity or some other measure." BLACK'S LAW DICTIONARY 1758 (11th ed. 2019); *see also* "property tax," *id.* at 1760 ("A tax levied on the owner of property (esp[ecially] real property), usu[ally] based on the property's value.").

at 87; *see also Culliton v. Chase*, 174 Wash. 363, 385, 25 P.2d 81 (1933) (Blake, J., dissenting) ("In 1889 the major portion of the wealth of the state lay in its lands and their produce . . . ."). Property taxes proved a fairly equitable and effective way to fund government because "in those days the value of tangible property was great and the cost of government little." *Culliton*, 174 Wash. at 385 (Blake, J., dissenting). Things changed, however, as the population expanded and the state urbanized. Washington's population more than tripled between 1890 and 1910. BURROWS, *supra*, at 88. This fueled a greater need for government services and programs, especially education and roads. *Id.* at 88, 90-91. From the 1891–1893 biennium to the 1909–1911 biennium, government expenditures increased by over 600 percent. *Id.* at 88. In that same period, multiple national recessions stalled the Washington economy, causing widespread unemployment and a decrease in property values. *Id.* Population growth combined with declining property values translated to greater real property tax rates in order to meet the burgeoning demand for revenue. *Id.* Rates more than doubled from 1890 to 1912—from 0.7 percent to 1.6 percent—then climbed to 2.5 percent by 1924. *Id.* at 88, 121. Meanwhile, Washington industrialized, and individual wealth increasingly shifted to intangible forms of property like stocks and bonds, which largely evaded taxation because intangibles were easy to hide. *Id.* at 94, 131; *Culliton*, 174 Wash. at 385 (Blake, J. dissenting).

6

*Quinn v. State*, No. 100769-8

Banks also successfully lobbied for a property tax exemption for intangible personal property, exacerbating existing tax inequities. BURROWS, *supra*, at 122, 129.

The increasingly onerous and unfair property tax burden spurred a popular movement for tax reform, which gained steam in the 1920s. *See* Hugh D. Spitzer, *A Washington State Income Tax—Again?*, 16 U. PUGET SOUND L. REV. 515, 523-28 (1993). The most vocal organization supporting tax reform was the Washington State Grange, a coalition of farmers who felt the acute effects of economic depression and burdensome property taxes. PHIL ROBERTS, A PENNY FOR THE GOVERNOR, A DOLLAR FOR UNCLE SAM: INCOME TAXATION IN WASHINGTON 61, 64 (2002). The Grange became a driving force behind efforts to enact new tax legislation and to reform constitutional provisions governing taxation. *Id.* Washington's 1889 constitution did not limit property tax rates and it contained a strict uniformity clause requiring that property taxes be uniform on all forms of property. Spitzer, *supra*, at 522. Tax reformers sought to liberalize constitutional constraints on taxation and to introduce an income tax. *Id.* at 522-24.

In 1929, the legislature enacted the first state income tax: a five percent corporate "franchise tax" on the net income of banks and financial institutions. BURROWS, *supra*, at 130; ROBERTS, *supra*, at 66-67. The tax included liberal exemptions for large urban commercial banks, and it quickly faced legal challenges. Spitzer, *supra*, at 526. In *Aberdeen Savings & Loan Ass'n v. Chase*, 157 Wash. 351,

7

289 P. 536 (1930), this court voided the tax on federal law grounds.[2]  ROBERTS, *supra*, at 67.  Specifically, the court found an equal protection violation because the tax applied to corporate banks but not to unincorporated entities or natural persons engaged in the savings and loan business.  *Aberdeen*, 157 Wash. at 364-65.

Even as the franchise tax in *Aberdeen* fell, other tax reforms continued to take shape.  In 1929, the legislature proposed constitutional amendment 14, which voters approved the following year.  Spitzer, *supra*, at 524.  Amendment 14 struck the first four sections of article VII and enacted a new section 1:

> The power of taxation shall never be suspended, surrendered or contracted away.  *All taxes shall be uniform upon the same class of property* within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only.  *The word "property" as used herein shall mean and include everything, whether tangible or intangible, subject to ownership. . . .*

LAWS OF 1929, ch. 191, § 1 (approved Nov. 1930) (emphasis added).  This amendment allowed for different rates of taxation between different classes of property and expanded the constitutional definition of "property" to capture intangibles that had previously evaded taxation.

By 1932, the Great Depression was in full swing in Washington.  BURROWS, *supra*, at 137.  Calls for tax relief remained steady as unemployment rates soared, taxes went unpaid, and citizens lost their homes due to tax delinquency.  *Id.*  That

---

[2]  *Aberdeen* was the lead of two cases challenging the franchise tax.  Its companion case was *Burr, Conrad & Broom, Inc. v. Chase*, 157 Wash. 393, 289 P. 551 (1930).

8

year, the people took matters into their own hands and overwhelmingly approved two tax-related popular initiatives, I-64 and I-69, each by a vote of 70 percent. *Id.* The first initiative, I-64, imposed a 40-mill property tax rate limit.[3] The second initiative, I-69, enacted a graduated personal and corporate income tax. *Id.* at 138. But before the state collected any income tax revenues, I-69 faced court challenges. *Id.* This legal uncertainty, combined with the new 40-mill limit on property taxes, led the legislature to enact a B&O tax in order to meet the state's short-term fiscal needs. Spitzer, *supra*, at 529.

In 1933, the litigation challenging the I-69 income tax reached this court in the case of *Culliton v. Chase*, 174 Wash. 363. BURROWS, *supra*, at 138-39. That term, the court had only eight justices as Justice Parker had fallen ill, and historical records relay that the first vote was deadlocked, four to four. *Id.* at 138. The governor appointed a new justice who appeared to favor the tax, but, as the story is told, one justice changed his position while the case was pending, resulting in a five to four vote to void the tax. *Id.* at 138-39. The five justices joining that result agreed

---

[3] "Mill rate" is "[a] tax applied to real property whereby each mill represents $1 of tax assessment per $1,000 of the property's assessed value." BLACK'S LAW DICTIONARY, *supra*, at 1190. For example, if the mill rate is 40 mills and a home is valued at $100,000, the owner will pay $4,000 in property taxes. *See id.* The 40-mill limit was later incorporated into the state constitution through amendment 17 in 1944. H.R.J. Res. 1, 28th Leg., Reg. Sess. (Wash), LAWS OF 1943, at 936 (approved Nov. 1944); *see also* BURROWS, *supra*, at 159. Article VII, section 2's maximum levy rate of one percent as we know it today was enacted in 1972 through amendment 55. Engrossed S.J. Res. 1, 42d Leg., Reg. Sess. (Wash.), LAWS OF 1971, at 1827 (approved Nov. 1972); *see also Belas v. Kiga*, 135 Wn.2d 913, 922, 959 P.2d 1037 (1998).

that income falls within amendment 14's broad definition of property as everything "subject to ownership," so the graduated features of the tax violated the constitutional requirement that all taxes be uniform on the same class of property. *Culliton*, 174 Wash. at 378 (Holcomb, J., lead opinion), 381-82 (Mitchell, J., concurring), 383-84 (Steinert, J., concurring).

The same day the court decided *Culliton*, it also issued *State ex rel. Stiner v. Yelle*, upholding the B&O tax as a constitutional excise tax on the privilege of engaging in business, and not a property tax. 174 Wash. 402, 407, 25 P.2d 91 (1933). Washington was thus left with the B&O tax but no income tax. "Recognizing that the interim B&O tax measure passed in 1933 would not provide for the total cost of state government operations over the long term, the next legislature thoroughly overhauled the tax system with the Revenue Act of 1935 . . . ." Spitzer, *supra*, at 538. The Revenue Act of 1935 drew various legal challenges, with this court upholding retail sales and use taxes pursuant to *Stiner*, and voiding personal and corporate income taxes (which the legislature had labeled as "privilege" taxes) pursuant to *Culliton*. *Id.* at 538-41. In the years since, various attempts to enact a graduated income tax through legislation or constitutional amendment have all failed. BURROWS, *supra*, at 5.

By the end of the 1930s, the voters, legislature, and judiciary had carved the basic state tax structure that remains today. *See* Spitzer, *supra*, at 538. As noted,

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

we still have no graduated income tax, instead funding the state through a combination of other taxes such as the B&O tax, sales taxes, and real property taxes. Ours has been recognized as a uniquely regressive tax system that "asks those making the least to pay the most as a percentage of their income." RCW 82.87.010; *see also* ITEP, *supra*, at 127. The wealthiest households in Washington are disproportionately white, while the poorest households are disproportionately BIPOC. *See, e.g.*, WASH. FUTURE FUND COMM., *supra*, at 17; *see also* Br. of Amicus Curiae (Equity in Educ. Coal. et al.) at 8-16. As a result, Washington's upside-down tax system perpetuates systemic racism by placing a disproportionate tax burden on BIPOC residents.

*The 2021 Legislature Enacts a Capital Gains Tax*

Forty-one other states and the District of Columbia tax capital gains. Elizabeth McNichol, *State Taxes on Capital Gains*, CTR. ON BUDGET & POL'Y PRIORITIES (June 15, 2021), https://www.cbpp.org/research/state-budget-and-tax/state-taxes-on-capital-gains. During the 2021 session, the Washington Legislature followed suit and enacted Engrossed Substitute Senate Bill (ESSB) 5096, imposing a seven percent tax on the sale or exchange of certain long-term capital assets beginning January 1, 2022. LAWS OF 2021, ch. 196 (*codified as* ch. 82.87 RCW); *see also* RCW 82.87.040(1). Washington's capital gains tax was

passed by a narrow one-vote majority in the state senate in April 2021, and Governor Inslee signed the tax into law the following month. *See* LAWS OF 2021, ch. 196.

In enacting the tax, the legislature made specific findings that "it is the paramount duty of the state to amply provide every child in the state with an education" and that "high quality early learning and child care is critical to a child's success in school and life." RCW 82.87.010; *see also* WASH. CONST. art. IX, § 1 ("It is the paramount duty of the state to make ample provision for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex."). The legislature further found that "Washington's tax system today is the most regressive in the nation because it asks those making the least to pay the most as a percentage of their income." RCW 82.87.010. The legislative objective of the tax is thus twofold: "[t]o help meet the state's paramount duty" to amply fund public education, while "making material progress toward rebalancing the state's tax code." *Id.*

All revenues from the capital gains tax are dedicated to public education in Washington. The first $500 million collected from the tax each year will be deposited into the education legacy trust account, which supports K-12 education, expands access to higher education, and provides funding for early learning and child care programs. RCW 82.87.030(1)(a); *see also* RCW 83.100.230 (education legacy trust account). All annual revenue beyond $500 million will be deposited

into the common school construction account, which funds the construction of facilities for common schools. RCW 82.87.030(1)(b); *see also* RCW 28A.515.320 (common school construction fund).

In order to meet the legislative goal of raising new revenue without exacerbating existing tax inequities, the capital gains tax contains numerous exemptions and deductions, including for transactions involving real estate, retirement accounts, agriculture, certain family-owned businesses, and charitable donations. RCW 82.87.050, .060(4), .070(1). The tax applies only to individuals, not businesses. RCW 82.87.040(1). And it applies only to the sale or exchange of long-term capital assets, meaning the taxpayer has held the asset for longer than one year. *Id.*; RCW 82.87.020(6). The legislature also included a standard deduction of $250,000, so the tax applies only to nonexempt long-term capital gains that exceed $250,000 beginning January 1, 2022. RCW 82.87.060(1). For example, if a Washington resident made $260,000 from selling stocks in 2022, that person would owe the seven percent tax on $10,000 of that amount, or $700.

The legislature established an allocation process in order to avoid taxing capital gains attributable to another state. The statute allocates to Washington only those gains from the sale or exchange of tangible personal property located in-state and intangible property owned by individuals domiciled in-state. RCW 82.87.100(1)(a)-(b). The statute also identifies circumstances when tangible

personal property located out-of-state at the time of sale is allocated to Washington,

for example, if the owner is a Washington resident at the time of sale. RCW

82.87.100(1)(a). To further avoid the risk of taxation by multiple states, the statute

offers a tax credit "equal to the amount of any legally imposed income or excise tax

paid by the taxpayer to another taxing jurisdiction on capital gains derived from

capital assets within the other taxing jurisdiction." RCW 82.87.100(2)(a).

To calculate the total amount owed in a given tax year, taxpayers must identify

their "Washington capital gains," using federal tax reporting as a starting point.

RCW 82.87.020(1), (13). Then, specific adjustments are made to account for

statutory exemptions, deductions, and allocations before arriving at the Washington

taxable amount. The first payments are due from taxpayers on April 18, 2023. *See*

RCW 82.87.110(1) (tax due on or before federal tax day). The Department of

Revenue anticipates approximately 7,000 individuals will pay the tax in its first year.

Over its first six years, the tax is projected to generate nearly $2.5 billion in revenue.

*Procedural History*

Plaintiffs separately filed suit in Douglas County Superior Court, seeking to

facially invalidate the capital gains tax. All plaintiffs are individuals who own, or

are entities whose members own, capital assets, the gains on which are potentially

subject to the tax. They alleged the tax is a property tax, not an excise tax, and that

it violates the uniformity and levy limitations on property taxes set forth in article

*Quinn v. State*, No. 100769-8

VII, sections 1 and 2 of the Washington Constitution, as well as the privileges and immunities clause of the Washington Constitution. They further alleged the tax violates the dormant commerce clause of the United States Constitution.[4] The superior court consolidated the two cases and granted a motion by the "Education Parties"[5] (Intervenors) to intervene to defend the constitutionality of the tax.

Plaintiffs and the State filed cross motions for summary judgment on the facial constitutionality of the capital gains tax. The superior court denied the State's motion and granted summary judgment to Plaintiffs. The court characterized the tax as a property tax on income pursuant to *Culliton*, listing eight features of the tax it viewed as "hallmarks" of an income tax. Am. Clerk's Papers (ACP) at 869-72. It voided the tax as unconstitutional under article VII, sections 1 and 2 because (1) the $250,000 deduction violates the uniformity requirement and (2) the seven percent rate exceeds the constitutional maximum of one percent for property taxes. The court declined to address Plaintiffs' remaining claims.

Intervenors sought direct review under RAP 4.2(a)(2) because this case pertains to the constitutionality of a tax. They also sought direct review under RAP

---

[4] The Quinn Plaintiffs also pleaded a claim under article I, section 7 of the Washington Constitution (right of privacy), but they did not move for summary judgment on that claim and it is not before the court on appeal.

[5] The "Education Parties" include the Edmonds School District, Tamara Grubb (a teacher), Mary Curry (an early learning and childcare provider), and the Washington Education Association.

15

4.2(a)(4), arguing the case raises fundamental and urgent issues of broad public import, including the viability of the *Culliton* decision. We granted review and accepted amici curiae briefs from various groups: four supporting the State in favor of the capital gains tax[6] and three supporting Plaintiffs in opposing the tax.[7]

## ANALYSIS

This challenge to the capital gains tax is before the court on cross motions for summary judgment. We review summary judgment decisions de novo, viewing all facts in the light most favorable to the nonmoving party. *Wash. Bankers Ass'n v. Dep't of Revenue*, 198 Wn.2d 418, 427, 495 P.3d 808 (2021), *cert. denied*, 142 S. Ct. 2828 (2022).

Plaintiffs seek to facially invalidate the capital gains tax on three separate grounds. They first argue that the tax is a property tax on income pursuant to *Culliton* and that it violates the uniformity and levy limitations on property taxes set forth in article VII, sections 1 and 2 of the Washington Constitution. They also argue the tax violates our state constitution's privileges and immunities clause and the federal constitution's dormant commerce clause. The State maintains that the capital gains tax is an excise tax, not a property tax, and that each of Plaintiffs' constitutional

---

[6] Br. of Amicus Curiae (Equity in Educ. Coal. et al.); Amicus Curiae Br. of Law Professors; Amici Curiae Br. of Mary Ann Warren et al.; Wash. State Lab. Council et al. Br. of Amici Curiae.

[7] Br. of Amici Curiae Ass'n of Wash. Bus. et al.; Br. of Amici Bldg. Indus. Ass'n of Wash. et al.; Br. of Amici Curiae Nat'l Taxpayers Union Found. et al.

16

*Quinn v. State*, No. 100769-8

challenges fails. Separately, Intervenors challenge the wisdom of *Culliton*. If the court were to hold the capital gains tax comes within the purview of *Culliton*'s holding that an income tax is a property tax subject to article VII, sections 1 and 2, Intervenors urge the court to overturn *Culliton* as incorrect and harmful or because its legal underpinnings have eroded.[8]

We hold the capital gains tax is an excise tax under Washington law. We decline to reexamine *Culliton* because article VII's uniformity and levy limitations on property taxes do not apply. We further conclude the capital gains tax survives constitutional scrutiny under our state privileges and immunities clause and the federal dormant commerce clause. We therefore reverse the superior court's grant

---

[8] We will overrule precedent only upon a showing that (1) an established rule is incorrect and harmful or (2) the legal underpinnings of our precedent have changed or disappeared. *State v. Pierce*, 195 Wn.2d 230, 240, 455 P.3d 647 (2020) (plurality opinion). We have treated these standards as independent of each other, so satisfying one may provide justification to overrule a prior case. *See id.* (both standards met); *State v. Crossguns*, 199 Wn.2d 282, 290, 505 P.3d 529 (2022) (incorrect and harmful); *W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66, 322 P.3d 1207 (2014) (legal underpinnings). Our decisions to date have not explained why no showing of harm is required to overturn a precedent whose legal underpinnings have eroded, but our reasoning demonstrates this is a historically driven inquiry, as opposed to a reassessment that a precedent is legally incorrect. To determine if the legal underpinnings of a precedent have eroded, we generally look to whether the foundation of the legal principle at issue no longer exists, such as when a United States Supreme Court opinion we relied on is overturned. Requiring an additional showing of social harm in such circumstances would seem unnecessary, given that the very foundation of the rule we announced has eroded. In contrast, a determination that a precedent is legally incorrect generally involves a critical reassessment of the principles on which it rests. As an added protection against a later majority second-guessing the wisdom of a prior majority of the court and thereby creating instability in the rule of law, we require an additional showing that the prior court's interpretation has resulted in demonstrable harm.

*Quinn v. State*, No. 100769-8

of summary judgment to Plaintiffs and remand to the superior court for further proceedings consistent with this opinion.

I.      The Capital Gains Tax Is a Valid Excise Tax Not Subject to the Requirements of Article VII, Sections 1 and 2

"The Legislature possesses a plenary power in matters of taxation except as limited by the Constitution." *Belas v. Kiga*, 135 Wn.2d 913, 919, 959 P.2d 1037 (1998). The burden to prove a legislative act is unconstitutional rests on the statute's challenger—here, Plaintiffs—and is sometimes expressed as requiring proof beyond a reasonable doubt.[9] *Id.* at 920.

Plaintiffs' first constitutional argument is that the capital gains tax is a property tax that violates the uniformity and levy limitations imposed by article VII of the Washington Constitution. Article VII, section 1 requires that "[a]ll taxes shall be uniform upon the same class of property." Section 2 provides that "the aggregate of all tax levies upon real and personal property . . . shall not in any year exceed one percentum of the true and fair value of such property in money." These uniformity and levy requirements apply only to property taxes, not to excise taxes. *See, e.g., Harbour Vill. Apts. v. City of Mukilteo*, 139 Wn.2d 604, 605, 608, 989 P.2d 542

---

[9] As used in this context, "'beyond a reasonable doubt'" is not an evidentiary standard but a reflection of "respect for the legislature." *Sch. Dists.' All. for Adequate Funding of Special Educ. v. State*, 170 Wn.2d 599, 606, 244 P.3d 1 (2010). It signifies that we will not invalidate a statute unless the challenger, "by argument and research, convince[s] the court that there is no reasonable doubt that the statute violates the constitution." *Island County v. State*, 135 Wn.2d 141, 147, 955 P.2d 377 (1998).

18

(1999) (municipal tax on rental property was not an excise, but a property tax violative of article VII, sections 1 and 2). The central question we must answer is whether the capital gains tax constitutes a property tax within the meaning of our state constitution.

As the superior court correctly observed, this inquiry is "'guided by nearly a century of case law.'" ACP at 867 (internal quotation marks omitted) (quoting *Kunath v. City of Seattle*, 10 Wn. App. 2d 205, 216, 444 P.3d 1235 (2019), *review denied*, 195 Wn.2d 1013 (2020)). However, the superior court erred in its application of our precedent, which firmly indicates this tax is an excise. A steady line of cases beginning with *Culliton* defines a "property tax" as a tax on the mere ownership of property, while an "excise tax" applies to the exercise of rights in and to property or the exercise of a privilege. The capital gains tax is an excise tax because taxpayers do not owe the capital gains tax merely by virtue of owning capital assets or capital gains, like a property tax. Instead, the tax relates to the exercise of rights "in and to property"—namely, the power to sell or transfer capital assets— like an excise. *Mahler v. Tremper*, 40 Wn.2d 405, 410, 243 P.2d 627 (1952). And the "'incidents'" of this tax do not make it a property tax, as the superior court concluded, but rather confirm that it is an excise. ACP at 869. Because the capital gains tax is appropriately characterized as an excise under our precedent, the tax is not subject to the uniformity and levy requirements of article VII.

A. Background on Property and Excise Tax Precedent

This court once remarked there is no "precise line" separating property and excise taxes. *Morrow v. Henneford*, 182 Wash. 625, 628, 47 P.2d 1016 (1935). But over the course of decades, that line has sharpened. A survey of our cases reveals we have articulated and consistently applied certain key principles for distinguishing property taxes from excise taxes. Applying those principles here, the capital gains tax falls squarely on the excise side of the line because it taxes transactions involving capital assets—not the assets themselves or the income they generate.

As noted above, much of Washington's modern taxation landscape stems from reform efforts and related court decisions challenging those efforts in the early twentieth century. In 1930, this court ruled in *Aberdeen* that a corporate income tax violated federal equal protection guaranties. 157 Wash. at 365. Three years later, the court issued its landmark decision in *Culliton*, addressing the constitutionality of a newly enacted graduated personal income tax passed by voters through popular initiative. Relying in part on *Aberdeen*, the court held that income is "property" within the meaning of our state constitution, so an income tax must comply with the uniformity and levy requirements of article VII, sections 1 and 2 of the Washington Constitution. *Culliton*, 174 Wash. at 376 (invalidating graduated personal income tax for lack of uniformity). Since *Culliton*, Washington appellate courts have reaffirmed that holding, consistently striking down graduated net income taxes as

20

unconstitutional, nonuniform property taxes. *See Jensen v. Henneford*, 185 Wash. 209, 211, 215, 53 P.2d 607 (1936) (plurality decision) (personal net income tax); *Petrol. Navigation Co. v. Henneford*, 185 Wash. 495, 495-96, 55 P.2d 1056 (1936) (corporate net income tax); *Power, Inc. v. Huntley*, 39 Wn.2d 191, 193-95, 235 P.2d 173 (1951) (corporate net income tax); *Kunath*, 10 Wn. App. 2d at 211, 232 (personal net income tax). What all of these taxes had in common was that they imposed a broad-based net income tax, capturing "almost any income from almost every source." *Power, Inc.*, 39 Wn.2d at 197.

The same day this court decided *Culliton*, it also issued *Stiner*. 174 Wash. 402. That decision upheld Washington's first B&O tax, which assessed a tax on "'the privilege of engaging in business activities'" in this state, as measured by "'gross proceeds of sales, or gross income, as the case may be.'" *Id.* at 404 (quoting LAWS OF 1933, ch. 191). The *Stiner* court held the B&O tax is an excise, reasoning it "does not concern itself with income which has been acquired" and instead relates to the privilege of citizens to pursue "gainful occupation with the expectation that [they] will be by the state fully protected and made secure . . . in [their] gains therefrom." *Id.* at 406-07. "[T]hat the amount of the tax is measured by the amount of the income in no way affects the purpose of the act or the principle involved." *Id.* at 407. *Stiner* therefore distinguished between a property tax *on* income and an excise tax on a particular activity or privilege, which tax is *measured by* income.

21

Just two years later, in 1935, this court had an opportunity to apply the distinction drawn in *Culliton* and *Stiner* in a case challenging the constitutionality of a retail sales tax. We first noted that a tax's true character "'must be determined by its incidents,'" not by its name. *Morrow*, 182 Wash. at 628 (quoting *Wiseman v. Phillips*, 84 S.W.2d 91, 96 (Ark. 1935)). A property tax is "'a tax which falls upon the owner merely because [they are an] owner, regardless of the use or disposition made of [their] property.'" *Id.* at 631 (quoting *Bromley v. McCaughn*, 280 U.S. 124, 137, 50 S. Ct. 46, 74 L. Ed. 226 (1929)). In contrast, an excise tax is levied "upon licenses to pursue certain occupations, and upon corporate privileges," like the B&O tax. *Id.* at 627 (citing 1 THOMAS M. COOLEY, A TREATISE ON THE LAW OF TAXATION § 42 (4th ed. 1924)). And relevant to the present case, "'a tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership, is an excise.'" *Id.* at 630 (quoting *Bromley*, 280 U.S. at 136). The *Morrow* court upheld the retail sales tax as an excise, emphasizing it applies "'only to a limited exercise of property rights'" and is "'clearly distinguishable from a tax which falls upon the owner merely because [they are an] owner.'" *Id.* at 631 (quoting *Bromley*, 280 U.S. at 137).

In the decades since, this court has continued to apply the principles set forth in *Culliton*, *Stiner*, and *Morrow* to determine whether a tax constitutes an excise or property tax. For example, in *Mahler* this court upheld the real estate sales tax as an

22

excise. 40 Wn.2d at 406-07. Though that tax clearly concerned property, we held it is a valid excise because it taxes the *sale* of property. *Id.* at 409-10. Imposition of the tax is "not upon each and every owner merely because [they are] the owner of the property involved" but instead "relates to an exercise of one of several rights in and to property." *Id.* ("[a] sales tax . . . is a tax upon the act or incidence of transfer" and "not a tax upon the subject matter of that sale"); *accord Black v. State*, 67 Wn.2d 97, 99, 406 P.2d 761 (1965) (excise on the transaction of leasing personal property); *High Tide Seafoods v. State*, 106 Wn.2d 695, 700, 725 P.2d 411 (1986) (excise on the use, possession, and transfer of food fish for commercial purposes); *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 652, 62 P.3d 462 (2003) (excise on the transaction of leasing public property); *Covell v. City of Seattle*, 127 Wn.2d 874, 889-91, 905 P.2d 324 (1995) (property tax labeled a "street utility charge" but levied solely based on one's status as a residential homeowner), *abrogated on other grounds by Chong Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019); *Harbour Vill. Apts.* 139 Wn.2d at 608 (property tax on all residential properties offered for rent, regardless of whether they were rented). Most recently, we applied these principles in *In re Estate of Hambleton*, 181 Wn.2d 802, 335 P.3d 398 (2014). There, we unanimously upheld the estate tax as an excise "because the tax is 'not levied on the property of which an estate is composed. Rather it is imposed upon the shifting of economic benefits and the privilege of transmitting or receiving such

23

benefits.'" *Id.* at 832 (quoting *West v. Okla. Tax Comm'n*, 334 U.S. 717, 727, 68 S.

Ct. 1223, 92 L. Ed. 1676 (1948)).

Amidst this collection of precedent, there is one case reflecting a narrow expansion of *Culliton* and a limited departure from *Stiner*, *Morrow*, *Mahler*, and similar excise tax cases. In *Apartment Operators Ass'n of Seattle, Inc. v. Schumacher*, this court considered a challenge to a state tax imposed "'[u]pon every person engaging within this state in the business of . . . the renting or leasing of real property.'" 56 Wn.2d 46, 47, 351 P.2d 124 (1960) (quoting LAWS OF 1959, ch. 5, § 4). The tax was measured by gross rental business income exceeding $300 per month. *Id.* At the time of *Apartment Operators*, the "right to levy an excise tax on the privilege of doing business or exercising corporate franchises and to base that tax on income" was well established. *Power, Inc.*, 39 Wn.2d at 197; *see also, e.g.*, *Stiner*, 174 Wash. at 407 (B&O tax is a valid excise measured by income). Nonetheless, in a brief per curiam opinion, the court invalidated the rental tax as an unconstitutional, nonuniform property tax under *Culliton*. *Apt. Operators*, 56 Wn.2d at 47 (stating "a tax on rental income is a tax on property, and not an excise tax").[10]

---

[10] The sum total of the court's reasoning is captured in the following passage: "[A] tax on rental income is a tax on property, and not an excise tax. Furthermore, a tax upon rents from real estate is a tax upon the real estate itself, and is, thus, a second tax upon real estate. There is no tax levied by the act upon unrented real estate. For such reasons (the exclusion of gross income of under three hundred dollars and the second tax upon rental realty), the instant tax lacks the uniformity required by [article VII]." *Apt. Operators*, 56 Wn.2d at 47.

24

Importantly, our subsequent cases concerning taxation of rental profits appear to recognize *Apartment Operators* was flawed, and we expressly limited the holding in that case to its facts. For example, just five years later the court examined a retail sales tax as applied to the lease of a ship used as a floating hotel. *Black*, 67 Wn.2d at 98. Citing both *Morrow* and *Mahler*, the court upheld the tax as an excise "on the transaction of leasing tangible personal property." *Id.* at 99-100. It further noted, "To the extent that the per curiam opinion in *Apartment Operators may seem* to make statements inconsistent with the above outlined principles, it is hereby deemed not controlling in the instant case." *Id.* at 100 (citation omitted). When the case was cited nearly 40 years later, we again found *Apartment Operators* "not controlling" and upheld the leasehold excise tax (LET), concluding the LET is an excise because it applies to rental transactions for the use and occupancy of public property. *Wash. Pub. Ports Ass'n*, 148 Wn.2d at 650-52. This retreat from *Apartment Operators* evidences a recognition that it is out of step with the well-established rule that a tax measured by income remains an excise so long as it relates to the exercise of a privilege granted by the State or rights "in and to property," such as the power to lease or sell. *Mahler*, 40 Wn.2d at 410. Such excise taxes stand in contrast to taxes assessed on property by virtue of ownership itself. *See Harbour Vill. Apts.*, 139 Wn.2d at 607-08 (municipal per-unit "residential dwelling unit" fee was an unconstitutional property tax because it applied to every property offered for rent

25

regardless of whether property was actually rented, and thus "it is not the rental transaction which is taxed . . . it is the fact of ownership of rental *property* which is taxed"); *Covell*, 127 Wn.2d at 889-91 (municipal "street utility charge" levied on all residential property owners was an unconstitutional property tax because "liability for the charge ar[ose] from [the taxpayers]' status as property owners and not from their use of a city service").

This background on excise and property taxes establishes the foundation for our conclusion that the capital gains tax is properly considered an excise tax under Washington law and is therefore not subject to the strictures of article VII, sections 1 and 2.

B. The Capital Gains Tax Is an Excise Because It Relates to the Exercise of Rights in and to Property

The capital gains tax is an excise levied on capital transactions. Indeed, Plaintiffs concede the tax does not apply unless "assets are sold or exchanged for gain." Quinn Resp'ts' Resp. to State of Wash. Opening Br. (Quinn Br.) at 17; *see also* RCW 82.87.040(1) (tax "imposed on the sale or exchange of long-term capital assets"). No one owes the tax merely by virtue of asset ownership, as is characteristic of property taxes. *Morrow*, 182 Wash. at 631 (a property tax "falls upon the owner merely because [they are an] owner"). One can own capital assets without ever owing the tax. One owes the tax only when they sell or exchange qualifying long-term capital assets, as is characteristic of an excise. *Mahler*, 40

26

*Quinn v. State*, No. 100769-8

Wn.2d at 409-10 ("a tax upon the sale of property is not a tax upon the subject matter of that sale" and is instead an excise). It is well established that a tax relating to rights "in and to property," such as the power to sell capital assets, constitutes an excise. *Id.* at 410.

This tax is wholly unlike the broad-based net income taxes we previously invalidated under *Culliton*. Those taxes applied to the taxpayer's aggregate net income and were untethered to any specific taxable activity; rather, the taxable incident was the receipt of income itself. *See, e.g.*, *Jensen*, 185 Wash. at 218-19 (net income tax purporting to tax "'the privilege of receiving income'" was an unconstitutional property tax because taxing "the right to receive . . . income" is functionally equivalent to taxing income ownership (quoting LAWS OF 1935, ch. 178)); *Kunath*, 10 Wn. App. 2d at 222-24 (municipal tax on aggregate of net income sources amounted to an unconstitutional property tax under *Culliton*). Here, the capital gains tax does not capture net income sources but instead narrowly applies to capital transactions resulting in realized gains. Unlike the taxes considered in *Culliton*, *Jensen*, and similar cases involving net income taxes, this tax specifically targets an activity long recognized as subject to excise taxation—the sale or exchange of property.

The tax here is comparable to the real estate and rental excises we upheld in *Mahler*, *Black*, and *Washington Public Ports Ass'n*. Each of those cases involved

27

taxes that were *measured* by income derived from real estate sales or rentals, but we recognized those taxes were excises because they applied to real estate *transactions*. The taxable incident is the transaction. The same is true here: the capital gains tax is measured by gains (income) stemming from capital transactions—and it applies when "assets are sold or exchanged for gain." Quinn Br. at 17. *Mahler*, *Black*, and *Washington Public Ports Ass'n* are controlling. To the extent *Apartment Operators* supports a contrary conclusion, our later cases have limited *Apartment Operators* to its facts, and we decline to expand it now.

Plaintiffs vigorously argue the taxable incident is not the transaction but the realization of capital gains beyond $250,000. Plaintiffs confuse the tax's subject matter with its measure. The tax is not levied on capital gains; rather, it is measured by capital gains. Our cases unequivocally hold that excise taxes levied on a particular privilege or incident of property ownership may be measured by income, and this does not transform the fundamental nature of the tax. *E.g.*, *Stiner*, 174 Wash. at 407 (measuring an excise tax by income "in no way affects the purpose of the act or the principle involved"). We have upheld many excise taxes measured by income. *See generally, e.g.*, *Mahler*, 40 Wn.2d 405 (real estate sales excise measured as percentage of sale price); *Wash. Pub. Ports Ass'n*, 148 Wn.2d 637 (LET measured as percentage of rent); *Hambleton*, 181 Wn.2d 802 (estate excise measured as percentage of estate value). That this tax applies only when one realizes gains

28

*Quinn v. State*, No. 100769-8

beyond $250,000 speaks to the legislative choice to create certain deductions establishing a threshold at which the tax applies—it does not change the taxable incident, which remains the transaction, not the ownership of property. Indeed, many valid excise taxes contain similar features. *See, e.g.*, RCW 82.32.045(5)(a) (B&O tax exempts businesses that gross $125,000 or less annually); *Estate Tax Tables*, WASH. STATE DEP'T OF REVENUE (2023) (under RCW 83.100.020(1)(a)(iii), estate tax exempts estates worth $2,193,000 or less), https://dor.wa.gov/taxes-rates/other-taxes/estate-tax-tables [https://perma.cc/LX6G-VNXL]; RCW 82.08.0293(1) (retail sales tax exempts transactions for sale of food). Exemptions and deductions are pervasive features of excise and property taxes alike. None of our cases appear to suggest the presence of these features bears on the subject or nature of the tax, which, again, relates to rights "in and to property," as an excise. *Mahler*, 40 Wn.2d at 410.[11]

Plaintiffs argue the capital gains tax cannot be an excise because it lacks certain distinctive features of a classic excise tax, but they are incorrect. First,

---

[11] Like Plaintiffs, the dissent misses this point with respect to the $250,000 deduction. The dissent views the taxable incident here as the realization of gains beyond $250,000, stating that "the financial outcome of the capital transaction *determines* whether the tax applies." Dissent at 14. But the same is true of the B&O excise, which exempts businesses whose profits fall below a certain dollar threshold. In those circumstances, the financial outcome similarly determines whether the tax applies—but the B&O tax is still an excise. The legislature may permissibly establish exemptions or deductions fixing a particular threshold that triggers the tax, and the choice to do so does not alter the fact that the transaction is the taxable incident.

*Quinn v. State*, No. 100769-8

Plaintiffs misconstrue prior cases indicating that excise taxes apply only to purely "voluntary" conduct. They maintain a true "excise tax is 'imposed upon a voluntary act *of the taxpayer*, which affords the taxpayer the benefits of the occupation, business, or activity that triggers the taxable event' . . . ." Quinn Br. at 15 (quoting *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 800, 123 P.3d 88 (2005)); *see also id.* at 18-19 (identifying possible scenarios where "individuals will be subject to the capital gains tax even if they do not deliberately, intentionally, or voluntarily take any action to cause the sale or exchange of long-term capital assets"). In Plaintiffs' view, the capital gains tax is not an excise because one owes the tax even in circumstances where the taxpayer does not "voluntarily" sell an asset, for example, where a trust sells capital assets on behalf of trust beneficiaries. To be sure, voluntariness is a distinctive feature of excise taxes, but Plaintiffs take too narrow a view. The State correctly notes that most transactions subject to this tax will have been voluntarily made by the taxpayer, and we are unpersuaded that the nature of the tax changes under the circumstances proffered by Plaintiffs, where the taxpayer does not personally undertake the transaction from which they realize a gain. Plaintiffs' logic falters when considered in the context of other taxes we have held to be valid excises based on voluntary transfers of property. For example, we unanimously upheld the estate tax as a valid excise though it is triggered by death—an event not usually associated with individual voluntary choice. *Hambleton*, 181

30

*Quinn v. State*, No. 100769-8

Wn.2d at 831-33 ("taxing [qualified terminable interest property] assets upon the death of a surviving spouse qualifies as an excise tax"). And in the context of real estate transactions, a minority owner of property would still owe the real estate excise even if they personally objected to the majority owner's decision to sell jointly held property. "Voluntariness" in this context is best understood as pertaining to some action that results in a sale or transfer of property as the taxable event, whether or not reflecting the individual will of the taxpayer. That there may not be a personal, deliberate decision to engage in a transaction by the taxpayer in some situations does not transform this tax from an excise into a property tax.

Next, Plaintiffs argue the capital gains tax cannot be an excise because it does not rest on the exercise of any taxable privilege, as with the B&O tax. Moreover, they argue, the tax is not measured by the extent that an individual engages with any privilege. As to the first point, the State is not always required to identify a taxable privilege in order for a tax to constitute an excise. While that was the case with the B&O tax at issue in *Stiner*, there are different flavors of excise taxes under our precedent. Some regulate a particular privilege granted by the State, whereas others relate "to an exercise of one of several rights in and to property," such as purchases, sales, and use. *Mahler*, 40 Wn.2d at 409-10; *see also, e.g.*, *P. Lorillard Co. v. City of Seattle*, 83 Wn.2d 586, 588-90, 521 P.2d 208 (1974) (holding municipal privilege tax on business of wholesaling cigarettes and state tax on "sale, use, [and]

31

consumption" of cigarette products "are not of the same nature" for preemption purposes, though both are excise taxes related to cigarettes).  We have upheld many taxes relating to the exercise of property rights as excise taxes without specifying a particular privilege that is being taxed.  *See generally, e.g.*, *Morrow*, 182 Wash. 625 (retail sales excise); *Mahler*, 40 Wn.2d 405 (real estate sales excise); *Black*, 67 Wn.2d 97 (retail sales excise applied to lease of floating hotel); *High Tide Seafoods*, 106 Wn.2d 695 (excise on transfer and possession of enhanced food fish for commercial purposes).  The capital gains tax belongs to this distinct category of excise taxes relating to incidents of property ownership, so the lack of any taxable privilege is immaterial.  As to the second point, Plaintiffs are correct that excise taxes typically have some degree of connection between the subject matter and the measure of the tax.  *See, e.g.*, *Sheehan*, 155 Wn.2d at 801 (excise taxes require a "nexus between the privilege and the taxation method," though the state constitution does not demand an entirely precise fit).  But when the capital gains tax is properly viewed as a tax on the exercise of rights in and to property, there is an obvious nexus between the subject of the tax (transactions involving capital assets) and the measure of the tax (gains realized from capital transactions).

More broadly considered, Plaintiffs' arguments concerning the ways in which the capital gains tax differs from other excise taxes rests on their view of the "incidents" of the tax.  The superior court accepted these arguments, concluding that

32

the capital gains tax bears certain "hallmarks" of property taxes. We take this opportunity to more specifically address the superior court's analysis and to provide clarity on our precedent concerning tax "incidents."

C. The Superior Court Misapplied Our Precedent Concerning Tax "Incidents," Which Confirm the Tax Is an Excise

In concluding the capital gains tax is a property tax on income, the superior court relied almost exclusively on the principle that courts determine the true nature of a tax based on "'its incidents, not by its name.'" *Harbour Vill. Apts*. 139 Wn.2d at 607 (quoting *Jensen*, 185 Wash. at 217); *see also* ACP at 869-71. The superior court listed eight "incidents" it viewed as "hallmarks" of an income tax, then it voided the tax for violating the uniformity and levy requirements of article VII, sections 1 and 2.

This approach is flawed because it treats the term "incidents" as encompassing all the various facets of a tax, ranging from exemptions and deductions, to reliance on federal reporting mechanisms, calculation methods, and more. Though it is true that we look beyond legislative labels and characterize a tax based on its "incidents," *Jensen*, 185 Wash. at 217, the plural term "incidents" as used in our cases describes specific elements of a tax. We have explained that any tax statute has three basic elements: (1) the "taxable incident," or the activity that triggers the tax, (2) the tax measure, or the "base that represents the value of the taxable incident," (3) and the tax rate, which, "when multiplied by the tax measure, determines 'the amount of tax

33

due.'" *Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 39, 156 P.3d 185 (2007) (quoting 1B KELLY KUNSCH ET AL., WASHINGTON PRACTICE: METHODS OF PRACTICE § 72.3, at 449 (1997)). When we determine the nature of a tax, we examine the first two elements: the subject of the tax (the "taxable incident") and the measure. *P. Lorillard Co.*, 83 Wn.2d at 589 ("We approve of and adopt the criteria for determining the incidence of a tax . . . that is, the subject matter and measure of the tax."); *Harbour Vill. Apts*. 139 Wn.2d at 607 n.1 ("The nature of a tax is revealed by examining the subject matter of the tax and . . . 'the measure of the tax.'" (quoting *Reed v. City of New Orleans*, 593 So. 2d 368, 371 (La. 1992)). Here the taxable incident is the sale or exchange of qualifying capital assets. The measure is the resulting gain. Consistent with our case law, the incidents of this tax confirm it is an excise. *See generally*, *e.g.*, *Mahler*, 40 Wn.2d 405 (excise on sale of real property measured by sale proceeds).

Rather than focusing on these elements, the superior court appears to have analogized between the capital gains tax and the federal individual income tax, drawing comparisons between the two. This is the wrong constitutional lens. Because the federal individual income tax is considered an *excise tax* under federal law, comparing various facets of the federal income tax and the capital gains tax does not support characterizing the capital gains tax as a *property tax* under article VII. *See Brushaber v. Union Pac. R.R. Co.*, 240 U.S. 1, 16-17, 36 S. Ct. 236, 60 L.

34

Ed. 493 (1916) (income taxes do not come "within the class of direct taxes on property," and "taxation on income [is] in its nature an excise entitled to be enforced as such"). To determine whether a tax is a property tax within the meaning of the Washington Constitution, we must look to Washington cases, which have articulated clear principles for distinguishing property and excise taxes. The superior court erred in its application of those principles here, instead identifying several "hallmarks" that find little or no support in our precedent delineating quintessential features of a property tax and that can be found in taxes we have upheld as excises.

The first such "hallmark" states the capital gains tax "relies upon federal IRS income tax returns that Washington residents must file and is thus derived from a taxpayer's annual federal income tax reporting." ACP at 869 (citing *Kunath*, 10 Wn. App. 2d at 215). A related "hallmark" states the tax "is based on an *aggregate* calculation of an individual's capital gains over the course of a year from all sources, taking into consideration various deductions and exclusions, to arrive at a single annual taxable dollar figure." *Id.* at 870. Reliance on federal tax reporting mechanisms does not transform the capital gains tax into a property tax. For example, we unanimously upheld the estate tax as an excise despite our express acknowledgement that Washington's Estate and Transfer Tax Act, ch. 83.100 RCW, "is based" on "federal estate tax law." *Hambleton*, 181 Wn.2d at 832. As with the estate tax, there are legitimate administrative reasons why the legislature would

35

*Quinn v. State*, No. 100769-8

implement aspects of federal tax law to collect the capital gains tax, including the use of federal forms and an aggregate calculation method. *See In re Est. of Bracken*, 175 Wn.2d 549, 583, 290 P.3d 99 (2012) (Madsen, J., concurring/dissenting) (by relying on federal estate tax law, our "legislature avoided having to duplicate congressional effort" in establishing an effective reporting system and "also helped to avoid the complication and confusion that a different set of state rules might create").

Reliance specifically on federal *income tax* reporting makes no difference here, either. *Power* is this court's sole case suggesting that reliance on federal income tax reporting may be relevant to the question whether a tax is an excise or property tax on income. 39 Wn.2d 191. But federal reporting alone was not determinative in *Power*, nor is it here. *Power* involved a corporate net income tax the legislature levied on every bank and corporation purportedly for "'the privilege of exercising its corporate franchise'" in Washington. *Id.* at 193 (quoting LAWS OF 1951, ch. 10). In ruling this tax was an unconstitutional, nonuniform property tax on income, the *Power* court noted, "It is geared throughout to the Federal income tax legislation as it relates to corporations." *Id.* at 196. But equally if not more important was that the tax had "no reference to income from the various business activities on which the [B&O] tax, a true excise tax, is based" but instead taxed "almost any income from almost every source." *Id.* at 196-97. The tax plainly was

36

not an excise because it was a broad-based levy on net income, lacking any nexus to a taxable privilege or incident of property ownership. *See id.*; *see also Jensen*, 185 Wash. at 218-19 (privilege of receiving income is not a taxable privilege). In contrast, the capital gains tax targets an activity long recognized as subject to excise taxation (the sale or exchange of property), and the clear nexus between the tax's subject matter (capital transactions) and its measure (capital gains) distinguishes it from the unconstitutional income tax in *Power*.

Another putative "hallmark" states the capital gains tax "is levied annually (like an income tax), not at the time of each transaction (like an excise tax)." ACP at 870. But an annual or periodic levy is not a "hallmark" of a property tax under our precedent. Many valid excise taxes are levied in this same way. *See, e.g.*, *Sheehan*, 155 Wn.2d at 795 (motor vehicle excise tax due annually); RCW 82.32.045(1)-(3) (excise taxes under chapters 82.04 (B&O), 82.08 (retail sales), 82.14 (local retail sales and use), and 82.16 (public utility) RCW can be reported and paid on monthly, quarterly, or annual basis). An additional "hallmark" is that the tax "includes a deduction for certain charitable donations the taxpayer has made during the tax year." ACP at 870. But Washington's estate tax, which we unanimously upheld as an excise in *Hambleton*, also contains deductions for charitable donations. WAC 458-57-115(2)(c). These features tell us nothing about whether the tax is an excise or property tax.

*Quinn v. State*, No. 100769-8

The superior court also distinguished the measure of the capital gains tax from the real estate excise tax. ACP at 870 (identifying "hallmark" that the tax "is levied not on the gross value of the property sold in a transaction (like an excise tax …), but on an individual's net capital gain (like an income tax))." We find no authority for the proposition that an excise tax on property transactions must be measured by gross property value, or that a property tax must be measured by net gain. Indeed, property taxes, not excises, are quintessentially measured on an ad valorem basis. And we have upheld other transaction-related excises measured in some other manner than by gross property value. *See, e.g.*, *Wash. Pub. Ports Ass'n*, 148 Wn.2d at 650-52 (LET assessed against amount of taxable rent). This measure of the tax does not constitute a hallmark that defines the capital gains tax as a property tax.

As with the Plaintiffs' analysis of taxable "incidents," the superior court's reliance on certain "hallmarks" of the capital gains tax drifts from the relevant distinctions drawn in our precedent. The principles developed in the line of cases from *Culliton* and *Stiner* through *Hambleton* support the conclusion that the capital gains tax is in the nature of an excise tax, not a property tax subject to the strictures of article VII, sections 1 and 2. In light of this holding, we need not address the uniformity and levy limitations of article VII, and we decline to reexamine the *Culliton* decision, as the capital gains excise tax falls outside the scope of *Culliton*'s holding related to property taxes on income. We next turn to Plaintiffs' remaining

38

*Quinn v. State*, No. 100769-8

challenges to the tax under the state privileges and immunities clause and the federal dormant commerce clause.

## II.     Plaintiffs' Remaining Constitutional Challenges Fail

Separate from their article VII claim, Plaintiffs seek to facially invalidate the capital gains tax on two additional constitutional grounds.  They argue the tax violates (1) the privileges and immunities clause of the state constitution and (2) the dormant commerce clause of the federal constitution.  We hold the capital gains tax does not violate either constitutional provision.

### A. The Capital Gains Tax Does Not Violate the Privileges and Immunities Clause of the Washington Constitution

As the party challenging the constitutionality of the capital gains tax, Plaintiffs bear the burden of proving a privileges and immunities violation.  *Woods v. Seattle's Union Gospel Mission*, 197 Wn.2d 231, 239, 481 P.3d 1060 (2021).  Plaintiffs' privileges and immunities claim fails because they have not established that the capital gains tax implicates a fundamental right of state citizenship, and even if it did, reasonable grounds support the tax.

"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."  WASH. CONST. art. I, § 12.  In some contexts, the Washington Constitution's privileges and immunities clause provides substantially similar protections to the federal equal protection

39

clause. *Schroeder v. Weighall*, 179 Wn.2d 566, 571, 316 P.3d 482 (2014); U.S. CONST. amend. XIV. However, we conduct an independent state constitutional analysis where a challenged law implicates a fundamental right of state citizenship, which rights are well defined in our cases. *Id.* at 572. We first ask whether the challenged law grants a "privilege" or "immunity" and, if so, whether there is a "reasonable ground" for granting that immunity. *Id.* at 573.

Plaintiffs' claim fails at both steps of the analysis. They first claim the capital gains tax implicates the fundamental right to be exempt from taxes from which other Washingtonians are exempt. Quinn Br. at 33 (quoting *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 813, 83 P.3d 419 (2004)). But we have never recognized such a right. Plaintiffs root their argument in a misreading of *Grant County* and *State v. Vance*, 29 Wash. 435, 70 P. 34 (1902). In those cases, we listed examples of fundamental rights recognized under the *federal* privileges and immunities clause, which included the right "to be exempt . . . from taxes or burdens which . . . citizens of *some other state* are exempt from." *Grant County*, 150 Wn.2d at 813 (emphasis added) (quoting *Vance*, 29 Wash. at 458). This privilege relates to the federal right of nonresidents to enter a state, compete for business, and pay taxes on equal footing with residents of that state. *See Lunding v. N.Y. Tax Appeals Tribunal*, 522 U.S. 287, 296, 118 S. Ct. 766, 139 L. Ed. 2d 717 (1998) (federal privileges and immunities clause protects "the right of a citizen of

40

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

any State to 'remove to and carry on business in another without being subjected in property or person to taxes more onerous than the citizens of the latter State are subjected to'" (quoting *Shaffer v. Carter*, 252 U.S. 37, 56, 40 S. Ct. 221, 64 L. Ed. 445 (1920))). Neither *Grant County* nor *Vance* recognized a fundamental right of Washington residents to enjoy the same tax exemptions enjoyed by all other Washington residents.

Even assuming the capital gains tax grants a privilege or immunity implicating a fundamental right, Plaintiffs' claim still fails because reasonable grounds support the legislature's classification choices. We have recognized that "the level of scrutiny applied when determining whether a 'reasonable ground' exists in distinguishing between classifications has differed depending on the issues involved." *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 145 Wn.2d 702, 731-32, 42 P.3d 394 (2002), *vacated in part on other grounds*, 150 Wn.2d 791. Because the legislature has broad discretion when making classifications for taxation purposes, we will not void a tax under article I, section 12 if "'any state of facts can reasonably be conceived that would sustain the classification.'" *Id.* at 732 (quoting *United Parcel Serv., Inc. v. State*, 102 Wn.2d 355, 369, 687 P.2d 186 (1984)).

The capital gains tax meets this standard. We have previously recognized that "the equalization of the burdens of taxation" is a "lawful taxing policy of the state." *Tex. Co. v. Cohn*, 8 Wn.2d 360, 387, 112 P.2d 522 (1941). And the funding of public

41

education is plainly a lawful taxing purpose, indeed it is the State's "paramount duty." WASH. CONST. art. IX, § 1; *see also McCleary v. State*, 173 Wn.2d 477, 529, 269 P.3d 227 (2012) (holding State failed in its affirmative constitutional duty to amply fund K-12 education). The legislature's express purpose in enacting the capital gains tax is to help meet the State's paramount duty to amply fund public education and to make "material progress toward rebalancing the state's tax code." RCW 82.87.010. Through targeted exemptions, this tax will generate substantial new revenue for public education without exacerbating existing inequities as between individuals by requiring Washington's wealthiest to pay a greater share of their overall income in state taxes. Plaintiffs may disagree with the legislative policy behind the capital gains tax, but they fall short of demonstrating that policy is unreasonable under article I, section 12. The State is therefore entitled to summary judgment on Plaintiffs' privileges and immunities claim.

B. The Capital Gains Tax Does Not Violate the Dormant Commerce
   Clause of the United States Constitution

Finally, we hold that Plaintiffs' dormant commerce clause claim fails because the capital gains tax satisfies federal constitutional requirements. The commerce clause grants Congress the power to "regulate commerce . . . among the several states." U.S. CONST. art. I, § 8, cl. 3. Implicit in this affirmative grant lies "a further, negative command, known as the dormant Commerce Clause, prohibiting certain state taxation even when Congress has failed to legislate on the subject." *Okla. Tax*

42

*Quinn v. State*, No. 100769-8

*Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179, 115 S. Ct. 1331, 131 L. Ed. 2d 261 (1995). Over the decades, the United States Supreme Court has construed the dormant commerce clause to protect the flow of interstate commerce and to prevent states from "retreating into economic isolation or jeopardizing the welfare of the Nation as a whole." *Id.* at 180. The Court's dormant commerce clause jurisprudence has evolved over the years, rejecting a formalistic approach in favor of a practical one. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 278-79, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977) (rejecting formalistic *Spector Motor Serv. Inc. v. O'Connor*, 340 U.S. 602, 71 S. Ct. 508, 95 L. Ed. 573 (1951), rule that believed "interstate commerce should enjoy a sort of 'free trade' immunity from state taxation"); *see also Goldberg v. Sweet*, 488 U.S. 252, 259-60, 109 S. Ct. 582, 102 L. Ed. 2d 607 (1989) (noting that *Complete Auto* sought to resolve tension by "specifically rejecting the view that the States cannot tax interstate commerce, while at the same time placing limits on state taxation of interstate commerce"); *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 615-16, 101 S. Ct. 2946, 69 L. Ed. 2d 884 (1981) (holding that courts must apply a "'consistent and rational method of inquiry,'" which we get from *Complete Auto* (quoting *Mobil Oil Corp. v. Comm'r of Texas*, 495 U.S. 425, 100 S. Ct. 1223, 63 L. Ed. 2d 510 (1980)).

Since *Complete Auto*, courts have consistently applied a four-part test to determine whether a state tax violates the dormant commerce clause. *See, e.g.,*

43

*Wash. Bankers Ass'n*, 198 Wn.2d at 429. The *Complete Auto* test "requires a tax to be (1) 'applied to an activity with a substantial nexus with the taxing State,' (2) 'fairly apportioned,' (3) nondiscriminatory with respect to interstate commerce, and (4) 'fairly related to the services provided by the State.'" *Id.* (quoting *Complete Auto*, 430 U.S. at 279). "If a tax fails any one of these requirements, it is invalid." *Id.* (citing *Ford Motor Co.*, 160 Wn.2d at 48). The State urges us to abandon the *Complete Auto* test and instead reject Plaintiffs' dormant commerce clause claim "if there are any circumstances where the statute can constitutionally be applied." *Wash. State Republican Party v. Pub. Disclosure Comm'n*, 141 Wn.2d 245, 282 n.14, 4 P.3d 808 (2000). Because the State has cited no authority explaining why we should abandon the *Complete Auto* test, and we can see no basis to depart from it now, we adhere to *Complete Auto*.

The parties agree that the capital gains tax meets the fourth prong of the *Complete Auto* test and that Washington may tax capital gains derived from the sale or exchange of tangible property within its borders without violating the dormant commerce clause. We must therefore determine whether the statute's two other allocation methods—capital gains derived from the sale or exchange of (a) intangible property or (b) tangible property located out-of-state at the time of the transaction but owned by a taxpayer domiciled in-state—violate the first, second, or third prong of the *Complete Auto* test. *See* RCW 82.87.100(1).

The first prong of the *Complete Auto* test asks whether there is a substantial nexus between the taxing state and the taxable event. *South Dakota v. Wayfair, Inc.*, 585 U.S. __,138 S. Ct. 2080, 2099, 201 L. Ed. 2d 403 (2018). A nexus exists when taxpayers avail themselves of "[t]he substantial privilege of carrying on business in [the State]." *Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 444-45, 61 S. Ct. 246, 85 L. Ed. 267 (1940); *see also Commonwealth Edison Co.*, 453 U.S. at 626 ("[I]t is the activities *or presence* of the taxpayer in the State that may properly be made to bear a 'just share of state tax burden.'") (emphasis added) (quoting *W. Live Stock v. Bureau of Revenue*, 303 U.S. 250, 254, 58 S. Ct. 546, 82 L. Ed. 823 (1938))). Long-standing precedent holds the taxpayer's domicile state has tax jurisdiction over the sale or exchange of intangible goods. *Curry v. McCanless*, 307 U.S. 357, 368-69, 59 S. Ct. 900, 83 L. Ed. 1339 (1939).

A substantial nexus exists to support Washington's taxation of capital gains derived from the sale or exchange of tangible property located out-of-state. Plaintiffs argue a taxpayer's Washington residency cannot satisfy the nexus requirement. We reject this argument because it erroneously assumes that the capital gains tax is levied on the property rather than on the incidents and rights associated with the property. As explained, the capital gains tax is levied on capital *transactions*—not mere ownership of capital assets or gains—and the taxable incident is the taxpayer's exercise of their power to dispose of capital assets. That

*Quinn v. State*, No. 100769-8

power is exercised in the state where the taxpayer is domiciled. *Curry* is illustrative.

There, the Supreme Court determined a decedent's domicile state (Tennessee) had

jurisdiction to tax the transfer of an interest in stocks and bonds held in trust by an

Alabama trustee. *Curry*, 307 U.S. at 370-71. It concluded Tennessee could tax the

transaction because

> [t]he decedent's power to dispose of the intangibles was a potential
> source of wealth which was property in her hands from which she was
> under the highest obligation, in common with her fellow citizens of
> Tennessee, to contribute to the support of the government whose
> protection she enjoyed. Exercise of that power, which was in her
> complete and exclusive control in Tennessee, was made a taxable event
> by the statutes of the state.

*Id.* Like the inheritance tax in *Curry*, the capital gains tax relates to the taxpayer's

exercise of rights in and to property, including the power to dispose of that property.

Washington also has a nexus to the taxpayer's intangible property. The

Supreme Court has held that a domicile state can tax intangibles even when the

intangibles exist outside the state or when the taxpayer expands their activities

outside of their domicile state. Specifically, the Court stated:

> [I]t is undeniable that the state of domicile is not deprived, by the
> taxpayer's activities elsewhere, of its constitutional jurisdiction to tax
> [intangibles], and consequently that there are many circumstances in
> which more than one state may have jurisdiction to impose a tax and
> measure it by some or all of the taxpayer's intangibles.

*Curry*, 307 U.S. at 368; *see also In re Est. of Plasterer*, 49 Wn.2d 339, 341-42, 301

P.2d 539 (1956) (domicile state had jurisdiction to impose inheritance tax on the

46

heirs' right to receive payments from the sale of the decedent's real property located in another state because "[i]ntangible personal property has its situs at the domicile of the owner at the time of [their] death"). We hold that the taxpayer's in-state domicile provides a sufficient nexus between Washington and capital gains derived from the sale or exchange of intangible property.

The second question in the *Complete Auto* test asks whether a tax is fairly apportioned "to ensure that each State taxes only its fair share of an interstate transaction." *Goldberg*, 488 U.S. at 260-61. To assess any threat of malapportionment, we must ask whether the tax is internally consistent, and, if so, whether it is externally consistent as well. *Jefferson Lines*, 514 U.S. at 185. A tax is internally consistent when it is "structured so that if every State were to impose an identical tax, no multiple taxation would result." *Goldberg*, 488 U.S. at 261. Internal consistency looks to the structure of the tax, not its economic reality. *Jefferson Lines*, 514 U.S. at 185. "The external consistency test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Goldberg*, 488 U.S. at 262. External consistency pertains to "the economic justification for the State's claim upon the value taxed." *Jefferson Lines*, 514 U.S. at 185. "[T]he threat of real multiple taxation (though not by literally identical statutes) may indicate a State's impermissible overreaching." *Id.*

47

We hold the capital gains tax is internally consistent. The statute allocates to Washington long-term capital gains or losses from the sale or exchange of (1) tangible personal property located in-state, (2) tangible personal property located out-of-state if (i) the property was in-state any time during the present or previous taxable year, (ii) the taxpayer was a resident at the time of sale, or (iii) another jurisdiction does not subject the taxpayer to payment of an income or excise tax on those capital gains, and (3) intangible property if the taxpayer was domiciled in Washington. RCW 82.87.100(1). The statute also includes a tax credit to prevent any possible multiple taxation. RCW 82.87.100(2)(a) (tax credit allowed "equal to the amount of any legally imposed income or excise tax paid by the taxpayer to another taxing jurisdiction on capital gains derived from capital assets within the other taxing jurisdiction"). The United States Supreme Court has repeatedly held that a tax credit is an acceptable method of avoiding dormant commerce clause infirmity. *See, e.g.*, *Comptroller of Treasury v. Wynne*, 575 U.S. 542, 567-68, 135 S. Ct. 1787, 191 L. Ed. 2d 813 (2015) (suggesting "Maryland could remedy the infirmity in its tax scheme by offering" tax credit); *Goldberg*, 488 U.S. at 264 ("To the extent that other States' [taxing schemes] pose a risk of multiple taxation, the credit provision contained in the Tax Act operates to avoid actual multiple taxation."); *D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 31, 108 S. Ct. 1619, 100

48

*Quinn v. State*, No. 100769-8

L. Ed. 2d 21 (1988) (Louisiana taxing scheme fairly apportioned because it provides tax credit).[12]

In addition, we reject Plaintiffs' argument that the tax fails internal consistency merely because another taxing jurisdiction *could* tax the capital transaction. The "limited possibility of multiple taxation . . . is not sufficient to invalidate" an entire tax scheme. *Goldberg*, 488 U.S. at 264. Multiple states may have an interest in taxing an activity related to intangible property without raising apportionment concerns. *See Mobil Oil Corp.*, 445 U.S. at 444-45. Plaintiffs have failed to demonstrate how the statute would result in multiple taxation if all states adopted the same tax. Hypotheticals are not sufficient to facially invalidate the tax, and an as-applied challenge is the best remedy for a taxpayer if any of those hypothetical circumstances materialize and in fact result in multiple taxation.

---

[12] Plaintiffs claim the tax credit cannot save the capital gains tax because it extends only "to capital gains paid by the taxpayer to another state 'from capital assets *within* the other taxing jurisdiction.'" Quinn Br. at 56-57 (quoting ESSB 5096, § 11(2)(a)); *see also* RCW 82.87.100(2)(a). They offer a hypothetical where a taxpayer with multiple residencies, such as Washington and California, could experience multiple taxation. *Id*. But the statutory definition of "residency" ensures that an individual can have only one residency. RCW 82.87.020(10) (residency relates to domicile). Moreover, it appears Washington's capital gains tax would not apply in Plaintiffs' example because California taxes capital gains as income. RCW 82.87.100(1)(a)(iii) (gains allocated to Washington if "[t]he taxpayer is not subject to the payment of an *income* or excise *tax legally imposed on the long-term capital gains or losses* by another taxing jurisdiction" (emphasis added)).

49

*Goldberg*, 488 U.S. at 264 (remote possibility of multiple taxation insufficient to facially invalidate tax).

We also hold the capital gains tax is externally consistent. Plaintiffs complain that a taxpayer's residency does not give Washington an economic justification for taxing capital gains derived from the sale or exchange of intangible property or personal property located out-of-state. But, as explained, Washington does have a valid interest in taxing these gains. Plaintiffs also argue the capital gains tax lacks "any principles of apportionment" and potentially subjects individuals to multiple taxation. Quinn Br. at 60 (emphasis omitted). Plaintiffs have "exaggerated the extent to which the [capital gains tax] creates a risk of multiple taxation." *Goldberg*, 488 U.S. at 262-63. The allocations found in RCW 82.87.100 detail when capital gains are attributed to Washington, and the tax credit prevents any real risk of multiple taxation. RCW 82.87.100(2)(a); *D.H. Holmes*, 486 U.S. at 31. The statute also permits taxpayers to deduct from their Washington capital gains "[a]mounts that the state is prohibited from taxing under the Constitution of this state or the Constitution or laws of the United States." RCW 82.87.060(2). Because the tax is internally and externally consistent, it satisfies *Complete Auto*'s second prong requiring fair apportionment.

As to *Complete Auto*'s third prong, we hold the capital gains tax does not discriminate against interstate commerce. "A tax may be discriminatory on its face,

50

in purpose, or by having the effect of unduly burdening interstate commerce." *Wash. Banker's Ass'n*, 198 Wn.2d at 429. "A facially discriminatory law textually identifies out-of-state persons or entities and grants them unfavorable treatment." *Filo Foods, LLC v. City of SeaTac*, 183 Wn.2d 770, 809, 357 P.3d 1040 (2015) (citing *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 568 & n.2, 117 S. Ct. 1590, 137 L. Ed. 2d 852 (1997)). A tax has a discriminatory effect if it subjects "'interstate commerce to the burden of 'multiple taxation.'" *Wynne*, 575 U.S. at 549-50 (internal quotation marks omitted) (quoting *Nw. States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458, 79 S. Ct. 357, 3 L. Ed. 2d 421 (1959)). In this respect, "the anti-discrimination principle has not in practice required much in addition to the requirement of fair apportionment." *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 171, 103 S. Ct. 2933, 77 L. Ed. 2d 545 (1983). The capital gains tax is not facially discriminatory because the plain text of the statute does not treat out-of-state individuals unfavorably. And as discussed, the capital gains tax does not subject an individual to multiple taxation because it provides a method for allocating capital gains to Washington and the tax credit removes any risk of actual multiple taxation.

Because the capital gains tax satisfies all four elements of the *Complete Auto* test, Plaintiffs have failed to demonstrate a dormant commerce clause violation and the State is entitled to summary judgment on this claim. While Plaintiffs' facial

51

*Quinn v. State*, No. 100769-8

challenge fails, we note that our holding today does not foreclose future as-applied challenges under the dormant commerce clause should factual circumstances arise in which the tax cannot be constitutionally applied.

CONCLUSION

The capital gains tax is a valid excise tax under Washington law. Because it is not a property tax, it is not subject to the uniformity and levy requirements of article VII, sections 1 and 2 of the Washington Constitution. In light of this holding, we decline to interpret article VII or to reconsider our decision in *Culliton*. We further hold the tax is consistent with our state constitution's privileges and immunities clause and the federal dormant commerce clause. We reverse the superior court order invalidating the capital gains tax and remand for further proceedings consistent with this opinion.

*Quinn v. State*, No. 100769-8

Stephens, J.

WE CONCUR:

González, C.J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Owens, J.

Whitener, J.

No. 100769-8
(Gordon McCloud, J., dissenting)

No. 100769-8

GORDON McCLOUD, J. (dissenting)—"Capital gains" are income.[1]

In Washington, income is property.[2]

A Washington "capital gains tax"[3] is therefore a property tax.

_____

[1] A "capital gain" is "[t]he profit realized when a capital asset is sold or exchanged." BLACK'S LAW DICTIONARY 259 (11th ed. 2019); *see also* U.S. INTERNAL REVENUE SERV. (IRS), *Tax Topic No. 409: Capital Gains and Losses*, https://www.irs.gov/taxtopics/tc409 (last updated Jan. 26, 2023). A "capital-gains tax" is therefore "[a] tax on income derived from the sale of a capital asset." BLACK'S LAW DICTIONARY, *supra*, at 1758. All 41 other states that tax capital gains treat such a tax as an income tax. *See* Elizabeth McNichol, *State Taxes on Capital Gains*, CTR. ON BUDGET & POL'Y PRIORITIES (June 15, 2021), https://www.cbpp.org/research/state-budget-and-tax/state-taxes-on-capital-gains [https://perma.cc/TN7N-7EPR]. So does the IRS. IRS, *Tax Topic No. 409*, *supra*.

[2] As the United States Supreme Court has said, state law defines property rights: "'[p]roperty interests . . . are not created by the [United States] Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S. Ct. 446, 66 L. Ed. 2d 358 (1980) (most alterations in original) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). Washington Constitution article VII, section 1 has one of the broadest definitions of "property" in this country: "The word 'property' as used herein shall mean and include everything, whether tangible or intangible, subject to ownership." Since "income" is obviously "subject to ownership" (as recognized by states defining everything from "theft" to "forfeiture" recognize), income obviously constitutes property.

[3] The code reviser creates the titles for new chapters of the Revised Code of Washington "without changing the meaning of any such law." RCW 1.08.015(2)(*l*). The title the code reviser gave to this law is "Capital Gains Tax." *See* ch. 82.87 RCW.

1

No. 100769-8
(Gordon McCloud, J., dissenting)

The problem is that in Washington, our constitution limits any such property tax to one percent annually.[4] The Washington Legislature nevertheless enacted a new law, Engrossed Substitute Senate Bill (ESSB) 5096, 67th Leg., Reg. Sess. (Wash. 2021), codified at ch. 82.87 RCW, which taxes "capital gains" at seven percent annually. That's more than one percent. This new "capital gains" tax therefore constitutes a property tax that violates the Washington Constitution's "one percent" annual limit on such a "property" tax.

In a contest between a Washington statute and the plain language of the Washington Constitution, the judicial branch has the duty to uphold the constitution.

I therefore respectfully dissent.

FACTUAL AND PROCEDURAL HISTORY

The history and the language of this new law show that it taxes the net income received from capital gains.

The 2021 legislature enacted ESSB 5096. It imposes a seven percent annual tax on an individual's "Washington capital gains" beginning January 1, 2022.

---

[4] WASH. CONST. art. VII, § 2 ("the aggregate of all tax levies upon real and personal property by the state and all taxing districts . . . shall not in any year exceed one percent of the true and fair value of such property in money").

No. 100769-8
(Gordon McCloud, J., dissenting)

LAWS OF 2021, ch. 196 (*codified as* ch. 82.87 RCW). The new statute defines the

term "Washington capital gains" as "an individual's adjusted capital gain." RCW

82.87.020(13). It then defines "an individual's adjusted capital gain" as the

individual's "net long-term capital gain reportable for federal income tax

purposes," with some exceptions for losses carried forward or back. RCW

82.87.020(1), (3). The statute exempts certain long-term capital gains[5] and gains

not attributable to Washington from the reach of this new tax. RCW

82.87.020(1)(d), (e). Thus, the resulting "adjusted capital gain" represents the net

income realized by the taxpayer from the sale of qualifying long-term capital

assets.

After determining the amount of "Washington capital gains," the taxpayer

may take a standard deduction of $250,000, or a total of $250,000 for spouses and

domestic partners; an adjusted deduction for gains derived from the sale or transfer

of certain family-owned small businesses; and a $100,000 deduction for charitable

donations over $250,000 made to certain Washington-based nonprofit

_____

[5] RCW 82.87.050 exempts certain categories of long-term capital gains, including real estate transactions, assets held in retirement accounts, assets pursuant to or under imminent threat of condemnation proceedings, certain depreciable property, certain livestock, timber and timberland, commercial fishing privileges, and goodwill received from the sales of auto dealerships.

No. 100769-8
(Gordon McCloud, J., dissenting)

organizations. RCW 82.87.060. The final amount of "Washington capital gains" is multiplied by seven percent to determine the total tax liability. RCW 82.87.040(1).

"The tax applies when the Washington capital gains are *recognized* by the taxpayer in accordance with this chapter." RCW 82.87.040(4)(a) (emphasis added). "If an individual's Washington capital gains are less than zero for a taxable year, no tax is due under this section." RCW 82.87.040(3).

As detailed by the majority, the Quinn and Clayton Plaintiffs separately filed suit in Douglas County Superior Court, challenging the new tax. *See* majority at 14-16. They argued (among other things) that the new tax constitutes a property tax and that it therefore violates the state constitution's one percent and uniformity limits on property taxes. WASH. CONST. art. VII, §§ 1, 2. After consolidating the cases and granting a motion to intervene by Edmonds School District, Tamara Grubb, Mary Curry, and the Washington Education Association ("Intervenors"), the trial court ruled in favor of the plaintiffs on cross motions for summary judgment. Majority at 15; Clerk's Papers at 862. We granted direct review of the case and accepted amicus briefing from numerous parties.

STANDARD OF REVIEW

This case asks us to interpret both a statute and the constitution. We review issues of statutory interpretation de novo. *Dep't of Ecology v. Campbell & Gwinn,*

4

No. 100769-8
(Gordon McCloud, J., dissenting)

*LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). When interpreting a statute, we begin with "the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 403, 377 P.3d 199 (2016) (citing *Campbell & Gwinn*, 146 Wn.2d at 10-11). If a statute is ambiguous, we may turn to other tools of statutory interpretation, such as legislative history. *Campbell & Gwinn*, 146 Wn.2d at 12.

We also review issues of constitutional interpretation de novo. *Wash. State Legislature v. Inslee*, 198 Wn.2d 561, 569, 498 P.3d 496 (2021). "The ultimate power to interpret, construe and enforce the constitution of this State belongs to the judiciary." *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 496, 585 P.2d 71 (1978) (citing cases); *see also Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."). "When interpreting constitutional provisions, we look first to the plain language of the text and will accord it its reasonable interpretation." *Wash. Water Jet Workers Ass'n v. Yarbrough*, 151 Wn.2d 470, 477, 90 P.3d 42 (2004) (citing *Anderson v. Chapman*, 86 Wn.2d 189, 191, 543 P.2d 229 (1975)). "In construing constitutional language, words are given their ordinary meaning

No. 100769-8
(Gordon McCloud, J., dissenting)

unless otherwise defined." *Zachman v. Whirlpool Fin. Corp.*, 123 Wn.2d 667, 670,

869 P.2d 1078 (1994) (citing *State ex rel. O'Connell v. Slavin,* 75 Wn.2d 554, 557,

452 P.2d 943 (1969) (citing *State ex rel. Albright v. Spokane,* 64 Wn.2d 767, 394

P.2d 231 (1964))). If a constitutional provision is ambiguous, we may "rely on

principles of statutory construction" to determine meaning. *Id.* at 671. Such

principles may include examining the historical context of the constitutional

provision. *Id.*; *Wash. Water Jet Workers Ass'n*, 151 Wn.2d at 477 (citing *Yelle v.*

*Bishop*, 55 Wn.2d 286, 291, 347 P.2d 1081 (1959)).

ANALYSIS

I. The Washington constitution contains an extremely broad definition of "property" as anything capable of "ownership"—and that includes income

We begin with the language of our state constitution. Article VII, sections 1

and 2 provide, in relevant part:

> *All taxes shall be uniform on the same class of property* within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only. *The word "property" as used herein shall mean and include everything, whether tangible or intangible, subject to ownership.* . . .
>
> . . . Except as hereinafter provided . . . the aggregate of all tax levies upon real and personal property by the state and all taxing districts . . . *shall not in any year exceed one percent of the true and fair value of such property* in money.

6

No. 100769-8
(Gordon McCloud, J., dissenting)

(Emphasis added.)

In sum, the state constitution says that the word "property," as used in the property tax limitation provision, means "everything . . . subject to ownership." That's pretty broad. It does not limit that definition—instead, it provides enlarging examples: "everything, whether tangible or intangible." Again, that's pretty broad.

The only possible limiting factor is that the piece of "everything" being considered must be "subject to ownership." The parties do not seriously deny that income is subject to ownership. Income is certainly treated as something that is capable of ownership by the law, in every context from criminal statutes to civil forfeiture statutes.

We therefore start with the axiom that income is subject to ownership and, hence, subject to article VII, sections 1 and 2 of the Washington Constitution.

II. The new "capital gains tax" taxes income; since income is a species of property, the new capital gains tax constitutes a property tax—not an excise tax

The key question in this case is whether the capital gains tax taxes capital gains or taxes something else.

As discussed above, every state that taxes "capital gains" treats such gains as income. In Washington, income is property. It necessarily follows that a

7

No. 100769-8
(Gordon McCloud, J., dissenting)

Washington "capital gains tax" constitutes a property tax that is subject to our constitution's article VII, section 1 one percent limit.

The majority tries to avoid this conclusion by advancing one main argument: that the new "capital gains tax" is really a "capital transactions" tax that just coincidentally happens to be measured by the amount of income it generates. One way the majority does this is by calling the taxable incident of the new law the capital transaction, rather than the "recognized" gain from the transaction, as the text of the statute says.  Majority at 20. Another way the majority does this is by describing this new law as an "excise tax" exempt from the state constitutional limit on property taxes—despite the fact that this court has never before treated a tax on *net income* as an excise tax.  *Id.* at 19-20.

I agree with the majority's starting point: the character of a tax is "'determined by its incidents,'" not by the label the legislature uses. Majority at 22 (internal quotation marks omitted) (quoting *Morrow v. Henneford*, 182 Wash. 625, 628, 47 P.2d 1016 (1935)). And I agree with the majority that an excise tax is one that "tax[es] 'a particular use or enjoyment of property or the shifting from one to

8

No. 100769-8
(Gordon McCloud, J., dissenting)

another of any power or privilege incidental to the ownership or enjoyment of property.'"[6]

The majority takes these rules and concludes that the capital gains tax constitutes an excise tax because "it taxes transactions involving capital assets— not the assets themselves or the income they generate." Majority at 20.

But that's not what the statute says. The plain language, context, and practical impact of the statute all compel the opposite conclusion: RCW 82.87.040 taxes the "gains" or income "recognized" by the transferrer of a qualifying capital asset. The statute does not tax the transfer itself.

First, let's define some terms. As outlined above, the statute imposes a tax on certain long-term capital gains. The statute says the starting point for calculating the tax is the "net long-term capital gain reportable for federal income tax

---

[6] *In re Est. of Hambleton*, 181 Wn.2d 802, 811, 335 P.3d 398 (2014) (quoting *Fernandez v. Wiener*, 326 U.S. 340, 352, 66 S. Ct. 178, 90 L. Ed. 116 (1945)); *see also Morrow*, 182 Wash. at 627, 630 (defining excise tax as a tax imposed "upon licenses to pursue certain occupations, and upon corporate privileges" or "'upon a particular use of property or the exercise of a single power over property incidental to ownership'" (quoting *Bromley v. McCaughn*, 280 U.S. 124, 136, 50 S. Ct. 46, 74 L. Ed. 226 (1929))); *Jensen v. Henneford*, 185 Wash. 209, 218, 53 P.2d 607 (1936) (plurality opinion) ("When a tax is, in truth, levied for the exercise of a substantive privilege granted or permitted by the state, the tax may be considered as an excise tax and sustained as such."); BLACK'S LAW DICTIONARY, *supra*, at 1759 (defining "excise tax" as a tax "imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)").

9

No. 100769-8
(Gordon McCloud, J., dissenting)

purposes." RCW 82.87.020(3). Federal law defines "net long-term capital gain" as "the excess of long-term capital gains for the taxable year over the long-term capital losses for such year." 26 U.S.C. § 1222. In other words, a "capital gain" is "[t]he profit realized when a capital asset is sold or exchanged." BLACK'S LAW DICTIONARY, *supra*, at 259; *see also* U.S. INTERNAL REVENUE SERV. (IRS): *Tax Topic No. 409: Capital Gains and Losses*, https://www.irs.gov/taxtopics/tc409 (last updated Jan. 26, 2023). A "capital-gains tax," then, is "[a] tax on income derived from the sale of a capital asset." BLACK'S LAW DICTIONARY, *supra*, at 1758. Though not dispositive of this issue of state statutory interpretation, it is worth noting that the IRS and all 41 states that tax capital gains treat such gains as income and a tax on them as an income tax.[7]

---

[7] McNichol, *supra*; IRS, *Tax Topic No. 409*, *supra*; *see also, e.g.*, *Capital Gains and Losses*, STATE OF CAL. FRANCHISE TAX BD. ("All capital gains are taxed as ordinary income."), https://www.ftb.ca.gov/file/personal/income-types/capital-gains-and-losses.html; *Capital Gains*, IDAHO STATE TAX COMM'N ("A capital gain can be short-term (one year or less) or long-term (more than one year), and you must report it on your income tax return."), https://tax.idaho.gov/taxes/income-tax/individual-income/filing/capital-gains/; MICH. DEP'T OF TREASURY, 2022 TAX TEXT 122, https://www.michigan.gov/taxes/-/media/Project/Websites/taxes/MISC/Tax-Professionals/2022_Tax_Text.pdf#page=122; *Individual Income Tax FAQs: What Is the Mississippi Tax Treatment of Long-Term Capital Gains?*, MISS. DEP'T OF REVENUE, https://www.dor.ms.gov/individual/individual-income-tax-faqs; *Capital Gains*, N.J. DIV. OF TAX'N, N.J. TREASURY, https://www.state.nj.us/treasury/taxation/njit9.shtml#:~:text=If%20you%20are%20a%20New,your%20basis%20in%20the%20property.

No. 100769-8
(Gordon McCloud, J., dissenting)

What *is* dispositive in determining the nature of the tax is the plain language of the tax statute. *Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 40, 156 P.3d 185 (2007). I agree with the majority that to determine the nature of the tax, we look at the "'taxable incident,'" or "the activity that triggers the tax," and the measure of the tax, or the "'base that represents the value of the taxable incident.'" Majority at 33-34 (quoting *Ford Motor Co*, 160 Wn.2d at 39).

But I disagree with the majority's analysis of what constitutes the taxable incident in this case. The plain language of the statute shows that taxable incident is not the sale or transfer of the capital asset itself. Rather, the taxable incident is the *realization of income* derived from the sale of qualifying capital assets. Because the taxable incident or event is the realization of income—*not* the mere transfer of the asset—the tax is an income tax, regardless of the label placed on it by the legislature. *Jensen v. Henneford*, 185 Wash. 209, 217, 53 P.2d 607 (1936) (plurality opinion). The measure of the tax is indisputably the amount of income gained from the transaction. The fact that the tax is measured by the amount of net income only reinforces the conclusion that the taxable incident is receipt of income and that the capital gains tax is an income tax.

11

No. 100769-8
(Gordon McCloud, J., dissenting)

> A. The taxable incident is the realization of profit following the transfer
> of a qualifying capital asset—not the transfer itself

The first step in determining the nature of the tax is determining the "taxable incident," or the activity that triggers the tax. *Ford Motor Co.*, 160 Wn.2d at 40. The State and the majority repeatedly assert that the taxable incident is the sale or exchange of a qualifying capital asset. But the language of the statute makes clear that that assertion is not accurate—or at least that it is incomplete.

The statute's plain language provides that "[t]he tax applies when the Washington capital gains *are recognized by the taxpayer* in accordance with this chapter." ESSB 5096, § 5(4)(a) (emphasis added). That is quite different from saying that the transfer itself is the taxable incident. If there's no recognized gain, there's no tax: "If an individual's Washington capital gains are less than zero for a taxable year, no tax is due under this section." ESSB 5096, § 5(3). Thus, the taxable incident is the sale or transfer of a qualifying asset *only if* that transaction results in a "capital gain." The taxable incident is the recognition of income.

The majority appears to concede this at times. For instance, the majority must acknowledge that the capital gains tax "narrowly applies to *capital transactions resulting in realized gains*." Majority at 27 (emphasis added). But the majority fails to acknowledge that a tax triggered by a "capital transaction" is not

12

No. 100769-8
(Gordon McCloud, J., dissenting)

the same as a tax triggered by a capital transaction resulting in profit. That is a critical distinction showing that the incident of this tax is the receipt of income.

Indeed, we previously emphasized the importance of this distinction when analyzing a "net corporate income tax" in 1951. In *Power, Inc. v. Huntley*, a statute purported to impose an excise tax on corporations for "'the privilege of doing business in this state.'" 39 Wn.2d 191, 193, 235 P.2d 173 (1951) (quoting LAWS OF 1951, 1st Ex. Sess., ch. 10, § 7). After examining the statute, we concluded that the tax was "a mere property tax 'masquerading as an excise.'" *Id.* at 196. We came to this conclusion because the tax applied *only if the corporation realized net income*—in other words, only if the corporation realized a gain. We explained that "the tax is levied because the corporation has net income, not because it does any business in this state or exercises its corporate franchise; conversely, if it has done a million dollars['] worth of business in this state but has no net income, it would not be subject to taxation under this act." *Id.* at 196-97.

We have the exact same situation with the new capital gains tax. If an individual engages in a million dollars' worth of qualifying capital asset transactions but realizes no gain, they are not subject to the tax. That weighs heavily in favor of concluding that the incident of this tax is not really "capital transactions" but rather realization of gain—income. *See also Jensen*, 185 Wash.

13

No. 100769-8
(Gordon McCloud, J., dissenting)

209 (holding that personal net income tax purportedly levied upon "the privilege of receiving income" was actually levied on the *property* (income) on which the amount of the tax was to be calculated, not on the abstract privilege of receiving income).

When we compare the capital gains tax with taxes we've previously found to be excise taxes, the same conclusion applies: the capital gains tax is not an excise because the incident of the tax is something more than a transaction *per se*. Consider, for example, retail sales taxes, which we have repeatedly upheld as excise taxes. The incident of a retail sales tax is a transaction involving the relevant good or service, regardless of whether the transaction resulted in net income or profit to the seller. *See, e.g.*, *Morrow*, 182 Wash. 625; *Vancouver Oil Co. v. Henneford*, 183 Wash. 317, 49 P.2d 14 (1935); *Klickitat County v. Jenner*, 15 Wn.2d 373, 130 P.2d 880 (1942); *Mahler v. Tremper*, 40 Wn.2d 405, 243 P.2d 627 (1952). That makes sense. If the real incident of the tax is the transaction—if the state is truly taxing the exercise of a privilege or the specific use of property—then the financial outcome of that transaction should not logically determine whether the tax applies. The tax applies to all relevant transactions.

But that's not what we have here. Here, the financial outcome of the capital transaction *determines* whether the tax applies.  The capital gains tax applies only

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100769-8
(Gordon McCloud, J., dissenting)

when the seller realizes a profit. Thus, there is no sense in which the "activity that triggers the tax" is a capital transaction *per se*. *Contra* majority at 33.

Under our controlling cases, the taxable incident of this capital gains tax is the capital gain, meaning the income (or property) realized by the transferrer—not the transaction itself.

B. The measure of the tax is the net income received following the transfer of the asset—not the gross income or value of the transaction, as is typical of excise taxes

The majority recognizes—as it must—that the measure of the capital gains tax is income. Majority at 28. This obviously militates in favor of considering this new capital gains tax to be a tax on capital gains.

But the majority counters that "[o]ur cases unequivocally hold that excise taxes levied on a particular privilege or incident of property ownership may be measured by income, and this does not transform the fundamental nature of the tax." *Id.* (citing *State ex rel. Stiner v. Yelle*, 174 Wash. 402, 407, 25 P.2d 91 (1933)).

I agree that our cases have held that an excise tax may be measured by some kind of income. But in every case where this court upheld an excise tax that was measured by income, the tax was measured by *gross* income—not by *net* income, such as capital gains. *E.g.*, *Stiner*, 174 Wash. at 404 (excise tax measured by

15

No. 100769-8
(Gordon McCloud, J., dissenting)

"'values, gross proceeds of sales, or gross income'" (quoting LAWS OF 1933, ch. 191, § 2); *Supply Laundry Co. v. Jenner*, 178 Wash. 72, 34 P.2d 363 (1934) (same); *Morrow*, 182 Wash. 625 (excise tax measured by gross sale price of tangible personal property); *Vancouver Oil Co.*, 183 Wash. 317 (same); *P. Lorillard Co. v. City of Seattle*, 83 Wn.2d 586, 521 P.2d 208 (1974) (excise taxes measured by gross proceeds of wholesale cigarette sales and by set price per cigarette, respectively).

Similarly, this court has upheld excise taxes measured by the *gross value* of a transaction, item, or contract, not by the value of net income such as capital gains. *State ex rel. Hansen v. Salter*, 190 Wash. 703, 70 P.2d 1056 (1937) (excise tax measured by fair market value of vehicle); *Mahler*, 40 Wn.2d 405 (excise tax measured by gross sales price of real estate); *St. Paul & Tacoma Lumber Co. v. State*, 40 Wn.2d 347, 243 P.2d 474 (1952) (excise tax on certain products measured by value of product); *Black v. State*, 67 Wn.2d 97, 406 P.2d 761 (1965) (excise tax measured by contract price of lease); *High Tide Seafoods v. State*, 106 Wn.2d 695, 725 P.2d 411 (1986) (excise tax measured by value of enhanced food fish at the point of landing); *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 62 P.3d 462 (2003) (excise tax measured by contract price of lease); *Sheehan v. Cent. Puget Sound Reg'l Transit Auth.*, 155 Wn.2d 790, 123 P.3d 88

16

No. 100769-8
(Gordon McCloud, J., dissenting)

(2005) (excise tax measured by fair market value of motor vehicle); *In re Est. of Hambleton*, 181 Wn.2d 802, 335 P.3d 398 (2014) (excise tax measured by total value of estate).

I can find no Washington case upholding a tax as an excise where the measure of the tax was *net* income or gain. Instead, such taxes have consistently been invalidated as nonuniform property taxes. *Culliton v. Chase*, 174 Wash. 363, 25 P.2d 81 (1933) (plurality opinion) (tax on net income was property tax); *Petrol. Navigation Co. v. Henneford*, 185 Wash. 495, 55 P.2d 1056 (1936) (same); *Jensen*, 185 Wash. 209 (same); *Power, Inc.*, 39 Wn.2d 191 (same); *Kunath v. City of Seattle*, 10 Wn. App. 2d 205, 221, 444 P.3d 1235 (2019) (same).

All of this makes sense when considering the nature of an excise. An excise tax is supposed to be a tax on the privilege of undertaking certain transactions or exercising certain rights in property. There is a logical nexus between exercising the privilege of engaging in that entire transaction (or exercising that entire property right) and using the value of that entire transaction (or the full value of the property) to measure the tax on that privilege. As we recently explained, an excise tax is "directly imposed based upon the extent to which the taxpayer enjoys the taxable privilege." *Sheehan*, 155 Wn.2d at 800 (citing *Harbour Vill. Apts. v. City of Mukilteo*, 139 Wn.2d 604, 611, 989 P.2d 542 (1999) (Talmadge, J., dissenting));

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100769-8
(Gordon McCloud, J., dissenting)

*Black*, 67 Wn.2d at 99 (if a tax is "'measured by the amount of business done or the extent to which the conferred privileges have been enjoyed or exercised by the taxpayer, irrespective of the nature or value of the taxpayer's assets, it is regarded as an excise'" (quoting 103 A.L.R. 18 (1936))). Gross income or value is a reasonable proxy for the amount of business done or the extent to which a taxpayer has enjoyed a privilege.

But the new capital gains tax statute taxes only net income or gain. It therefore looks much more similar to the taxes we've invalidated as property taxes that fail to comply with article VII, sections 1 and 2.

To summarize, "capital gains" means income. This capital gains tax is not triggered by each and every sale of a qualifying capital asset, as one might expect of an excise tax. And this capital gains tax is not measured by gross income or by the full value of the asset, as one might expect of an excise tax. Rather, the new capital gains tax is triggered *only* if the taxpayer realizes a gain from the sale of the asset, and the measure of the tax is the amount of gain realized. Under our controlling cases, the new capital gains tax is an income tax—not an excise tax.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100769-8
(Gordon McCloud, J., dissenting)

III.    The capital gains tax violates the constitutional limitations on property taxes

To repeat, our constitution states that the term "property" "shall mean and include *everything, whether tangible or intangible, subject to ownership*." WASH. CONST. art. VII, § 1 (emphasis added). Our previous cases interpreting this provision, beginning with *Culliton*, consistently hold that "income" falls within the category of property as defined in article VII. 174 Wash. at 381. In *Culliton*, we noted the "comprehensive" nature of the constitutional definition of "property" and held that an income tax is a property tax. *Id.* at 374. We reasoned that "[i]ncome is either property under our fourteenth amendment, or no one owns it." *Id.* Since *Culliton*, this court has consistently held that income is property for purposes of article VII, section 1. *E.g.*, *Jensen*, 185 Wash. at 217; *Power, Inc.*, 39 Wn.2d at 194.

As the majority notes, we will overrule precedent only upon a showing that (1) an established rule is incorrect and harmful or (2) the legal underpinnings of our precedent have changed or disappeared. Majority at 17 n. 8 (citing *State v. Pierce*, 195 Wn.2d 230, 240, 455 P.3d 647 (2020) (plurality opinion)).  The Intervenors, but not the parties, argue that we should overrule *Culliton* on both of these bases. Intervenors' Opening Br. at 16-18. To be sure, I agree with the

19

No. 100769-8
(Gordon McCloud, J., dissenting)

Intervenors that some of *Culliton*'s factual assertions were incorrect. Specifically, *Culliton* incorrectly asserted that *Aberdeen Savings & Loan Ass'n v. Chase*, 157 Wash. 351, 289 P. 536 (1930), had already decided the issue whether an income tax is a property tax under the state constitution. 174 Wash. at 376; *see* Intervenors' Opening Br. at 25-27. *Culliton* also stated that "[t]he overwhelming weight of judicial authority is that 'income' is property and a tax upon income is a tax upon property," a statement that appears to have been inaccurate or at least overbroad at the time. 174 Wash. at 374; *see* Intervenors' Opening Br. at 31-34.

But these errors don't undermine *Culliton*'s interpretation of article VII, section 1's uniquely broad definition of "property." That language is plain and unambiguous: "property" "mean[s] and include[s] *everything*, whether tangible or intangible, subject to ownership." WASH. CONST. art. VII, § 1 (emphasis added); *see also* BLACK'S LAW DICTIONARY, *supra*, at 1470. "Income" is "[t]he money or other form of payment that one receives, usu[ally] periodically, from employment, business, investments, royalties, gifts, and the like." BLACK'S LAW DICTIONARY, *supra*, at 912. Whether tangible or intangible, "money or other form of payment" is

20

No. 100769-8
(Gordon McCloud, J., dissenting)

clearly capable of ownership. Therefore, income is property under article VII's

broad definition.[8]

To be sure, this court has clearly held that the constitution was "not intended

to be a static document incapable of coping with changing times. It was meant to

be, and is, a living document with current effectiveness." *Seattle Sch. Dist.*, 90

Wn.2d at 517. When we deal with broad, general constitutional rights and values

(such as "due process" or "equal protection"), we have a duty to interpret and

apply those rights and values in a way that will protect all Washingtonians, not just

the few whom the framers might have had in mind when drafting them.  But in this

case, we are not interpreting such a broad, general term, right, or value. Instead, we

are interpreting a narrow definitional phrase comprising words whose meaning and

context have not drastically changed in the past century. Article VII, section 1

explicitly defines "property" so broadly that it includes income.  There is just no

room to say it doesn't.

Since the capital gains tax is a property tax, it is subject to the one percent

levy cap contained in article VII, section 2. This tax clearly violates that provision

---

[8] I disagree with Intervenors' argument that *Culliton*'s legal underpinnings have eroded for the same reason: the constitutional language that the *Culliton* court considered has not changed since *Culliton* was decided.

No. 100769-8
(Gordon McCloud, J., dissenting)

because it imposes a seven percent levy on a taxpayer's Washington capital gains.

I would affirm the trial court's decision that the tax is unconstitutional on that

ground and decline to reach the other constitutional issues raised by the petitioners.

CONCLUSION

A tax is determined by its incidents, not by its legislative label. The structure

of the capital gains tax shows that it is a tax on income resulting from certain

transactions—not a tax on a transaction *per se*. Therefore, the tax is an income tax,

not an excise tax. Under our constitution and case law, an income tax is a property

tax. As enacted, this income tax or "capital gains tax" violates the one percent levy

limitation of article VII, section 2.

Deciding whether to retain our regressive tax structure or to replace it with a

more equitable one is up to the legislature through legislation and the people

through constitutional amendment. The duty of the judiciary when faced with a

direct conflict between a statute and the constitution is to uphold the constitution.

The new capital gains tax violates article VII, section 2 of the Washington

Constitution. I would therefore affirm the trial court.

I respectfully dissent from the majority's contrary conclusion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100769-8
(Gordon McCloud, J., dissenting)

_____
Gordon McCloud, J.

_____
Johnson, J.

22